MORRIS COHON and RICHARD C. KLEINBERGER, Plaintiffs, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.

Supreme Court, Trial Term, New York County, June 12, 1939.

*Kramer & Dumey [Stephen Callaghan* of counsel], for the plaintiffs.

*William J. McArthur [A. D. Shackton* of counsel], for the defendant.

McGOLDRICK, J. The action was brought by plaintiffs, copartners in business as over-the-counter brokers, against United States Fidelity and Guaranty Company of Baltimore. It was predicated upon a " bankers' and brokers' blanket bond," indemnifying the firm in the sum of $10,000 for losses sustained, generally, " Through any dishonest act, wherever committed, of any of the Employees, * * * whether acting alone or in collusion with others."

The action resulted from what may be denominated faithless acts of one of the firm's employees, David Resnick. On January 11, 1937, he reported to the firm that he had purchased for its account from one A. Perrin sixty shares of Nassau and Suffolk Lighting Company stock at thirty-five and one-half. Relying on the fact that such purchase had been made, the firm sold sixty shares to customers at prices ranging from thirty-six and one-quarter to thirty-seven and three-quarters. No such purchase had been made by Resnick. When the firm so learned it was compelled to buy sixty shares in the market in order to make delivery to its customers. These purchases were made at prices approximately nine to ten points higher than the prices at which the firm had contracted to make the sales. Obviously there was a loss to the firm, which is included as part of the loss here sought to be recovered. In addition to this, Resnick, between the period of the 30th day of December, 1936, and the 23d day of January, 1937, reported that he had sold to a number of individually named customers shares of stock of American Republics, Consolidated Textiles, Consolidated Gas Utilities, Republic Natural Gas, and several other stocks, at certain given prices. The stocks sold were already on the shelves of the firm at the time of the reported sales. When the firm discovered that the sales made had actually not been made to the customers reported, and the latter refused to

accept delivery, it sold the securities in the open market at lower prices than those reported by Resnick. It claims as a loss the difference between the price at which it purchased the securities originally and for which it sold them. What Resnick's motive was in making these sales does not appear, except to the extent that he received $625 in commissions for making the pretended sales, which sum is included in the total amount of recovery demanded.

The trial revolved around two clauses in the bond, reading:

" Sec. 7. This bond does not cover —

" a — Any loss resulting directly or indirectly from forgery, unless the forgery be committed by or in collusion with one or more of the employes. * * *

" f — Any loss resulting directly or indirectly, from trading, actual or fictitious, whether in the name of the Insured or otherwise, and whether or not within the knowledge of the Insured, and notwithstanding any act or omission on the part of any Employe in connection therewith, or with any account recording the same."

Plaintiffs' claim was based upon the language of subdivision " a," which made forgery by an employee one of the grounds of recovery. That David Resnick in the course of his employ committed forgery in the third degree seems to be clear from the language of section 889 of the Penal Law. Defendant's answer to this in its separate affirmative defense is that the loss resulted from " trading, actual or fictitious," as provided in the exception in subdivision " f," and under which also the employee's " act or omission " in contributing to the trading loss did not change the situation. Under the rule of construction of written instruments, such as policies or bonds, the right to recover for a loss resulting from forgery of the employee is absolute under subdivision " a." The " act or omission " of the employee referred to in subdivision " f " cannot be deemed to put a limitation on the right to recover for forgery.

The court submitted to the jury the following questions of fact:

" Did the loss alleged to have been sustained by this plaintiff firm result directly from the forgery of Resnick?

" Were the sales and purchases of these various stocks and bonds caused by the forgery of Resnick?

" Are they transactions that are simply to be considered by you in the nature of establishing the claim of the plaintiff firm as to the damages which it suffered?

" If you find that the forgery, in and of itself, without any concurrence of ' retail sales ' or ' fictitious trading,' caused the loss,

then this plaintiff firm will be entitled to a verdict at your hands. If you find, however, that the loss sustained by the plaintiff firm resulted not solely from the forgery committed, but by reason of ' trading, actual or fictitious,' then there would have to be a verdict for the defendant. Those are the questions of fact that you are called upon to determine."

(1) The defense pleaded that the loss resulted from " trading, actual or fictitious." It, therefore, became important in the course of the trial to inquire whether the transactions from which the loss resulted were in the nature of " trading." Defendant endeavored to show that the word " trading " would have to be construed in the common ordinary sense of buying or selling. Plaintiffs, on the other hand, relied upon the term as it is understood in the special practice of the over-the-counter market. The position taken by the plaintiffs that the term " trading," as used in the policy, is to be construed in a technical rather than a broad sense is the correct one, if for no other reason than that the rule of strict construction requires an interpretation most favorable to the insured. Experts testified as to the meaning of the expression as used and understood in the street. Sales or purchases as brokers for the account of another were excluded from the scope of the term. A difference arose, however, as to what constituted " retail sales." Plaintiffs' expert excluded from the term " trading " transactions in the nature of " retail sales," and limited the term to transactions between dealers or brokers or financial institutions. Defendant's expert, on the other hand, called a transaction a trade if it was bought or sold on a flat price and not for the account of the customer, as in brokerage transaction; but he did admit that where a firm is in a position to supply a stock from a given amount of shares on its shelf the resulting sales of the stock are " retail sales." He also used the expressions " wholesale trade," " retail sale " and " retail trade " interchangeably. In any event, his testimony was not precise on the subject as against that of plaintiffs' expert that a sale to an individual customer is not trading.

A holding that every " retail sale " on a net basis is " trading," as defendant's expert testified, must lead to this *reductio ad absurdum:*

(2) An employee goes out and sells and delivers stock to a prospective customer for cash which he receives and embezzles. A bonding company having issued a similar " bankers' and brokers' blanket bond " could then disclaim liability under subdivision " f " upon the ground that the loss resulted " from trading " in connection with which an " act or omission on the part of " an " employee " was involved. Any construction making effective such a plan

would not only violate common sense but would give substantial support to a charge that insurer, in drafting the bond, used words that were intended to conceal rather than to express thought. The jury resolved the doubt created by the testimony of the experts as to the meaning of the term in favor of defendant, evidently deciding that the forgery was not the sole cause of the loss but that there was a concurrence of the factor of fictitious trading. In so doing they must have found that the fictitious retail sales and purchases made by Resnick and the firm's transactions to which they gave rise constituted " trading." The weight of the credible evidence and the attending circumstances do not sustain this conclusion.

While I am ordinarily loath to interfere with the verdict of a jury on a question of fact, there are persuasive circumstances here which constrain me to act otherwise: (1) The vacillating testimony of defendant's expert as to the meaning of " retail sales," which he virtually in all cases, except brokerage sales, considers " trading;" (2) although the losses may not have been the direct and inevitable and proximate result of Resnick's forgery, they were undoubtedly caused indirectly thereby, and effect must be given to the word " indirectly " as used in the bond; (3) the correctness of the method and manner of the admeasurement of such losses was not challenged, nor was the amount thereof as computed from the firm's books, the integrity of which was not attacked; (4) there was no " trading " integrated with the commission of forgery.

The motion to set aside the verdict as contrary to law and against the weight of the evidence is granted.

Exception is noted in favor of defendant. Thirty days' stay and sixty days to make a case.