AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff-Appellee,

v.

Thomas T. IRVIN, as Trustee, etc., et al., Defendants-Appellants.

No. 28304.

United States Court of Appeals, Fifth Circuit.

April 22, 1970.

Rehearing Denied June 16, 1970.

Arthur K. Bolton, Atty. Gen., State of Georgia, Larry D. Ruskaup, Asst. Atty. Gen., Atlanta, Ga., for appellants.

Smith, Currie & Hancock, Harry L. Griffin, Jr., David E. Walker, Atlanta, Ga., for appellee.

Before JONES, BELL and GODBOLD, Circuit Judges.

JONES, Circuit Judge:

The appellant, Thomas T. Irvin, is the Commissioner of Agriculture of the State of Georgia. In bonds required to be procured by livestock dealers under the Packers and Stockyards Act, 1921,[1] he is often named, and was so named in a bond before us on this appeal, as trustee for all persons who might be damaged by breaches of such bonds. The controlling question before this Court is whether the liability of a surety under a statutory bond written pursuant to the Act, and the regulations thereunder, terminates upon the effective date of another bond written by a different surety.

The Packers and Stockyards Act states that the Secretary of Agriculture of the United States, through the issuance of rules and regulations, may require reasonable bonds from livestock market agencies and dealers to insure the payment of their obligations to those with whom they do business.[2] The Secretary, under the authority of this statute, has promulgated regulations which contain certain requirements concerning the procurement of such bonds.[3] The regulations establish a formula for determining the amount of each such bond[4] and, with regard to the termination of bonds, provide that

"Each bond shall contain a provision requiring that, prior to terminating such bond, at least 30 days' notice in writing shall be given to the Administrator, Packers, and Stockyards Administration, U. S. Department of Agriculture, Washington, D. C., 20250, by the party terminating the bond. Such provision may state that in the event the surety writes a replacement bond, the 30-day notice requirement may be waived and the bond will be terminated as of the effective date of the replacement bond." 9 C.F.R. § 201.34 (1969).

H. F. Allen was a livestock dealer in Vidalia, Georgia. In compliance with the statute and regulations, Allen as principal, and American Casualty Company of Reading, Pennsylvania, as surety, gave a bond on November 23, 1965, to the Georgia Commissioner of Agriculture to secure Allen's livestock buying obligations. The bond was for $30,000.00 and named the Georgia Commissioner as trustee for all persons who might be damaged by a breach of the bond. The termination clause of the bond provided that

"This bond may be terminated by either party hereto by delivering a written notice of termination to the other party, and to the Director of the Packers and Stockyards Division at Washington, D. C., at least thirty days prior to the effective date of such termination. In the event that the surety named herein writes a new bond to replace this bond the thirty day termination provision will be waived and

---

1. 7 U.S.C.A. § 181 et seq. (1964).

2. 7 U.S.C.A. § 204 (1964).

3. 9 C.F.R. §§ 201.29–201.34 (1969).

4. 9 C.F.R. § 201.30 (1969).

this bond will become terminated as of the effective date of the replacement bond."

The Area Supervisor, Packers and Stockyards Administration, at Atlanta, Georgia, determined that the penal sum of the bond should be increased to $55,-000.00, and subsequent riders increased the penalty of the bond to that amount.

Allen obtained another bond effective November 23, 1967, with H. F. Allen, d/b/a H. F. Allen Livestock Co., as principal, Aetna Insurance Company, as surety, and the Georgia Commissioner of Agriculture as trustee and obligee under the bond. Like the American bond, this bond secured Allen's livestock buying obligations in the amount of $55,000.00.

American's agent was informed that Allen was procuring another bond from a different surety. The agent, on November 28, 1967, wrote American requesting it to take the necessary steps to cancel its bond as of November 23, 1967. American then wrote to the Packers and Stockyards Administration on December 14, 1967, stating that "we [American] have now been advised by our agent that renewal of this bond is not desired, and to enable us to cancel our file, will you please let this letter serve as our notice to you of our desire to be relieved of liability hereunder. Please let us know when we may deem our liability cancelled." The Administration replied that American's notice had been filed, terminating the bond effective January 18, 1968, which date was "30 days after receipt of notice in this office, and in accordance with the terms of the bond."

On March 15, 1968, the appellant, as trustee, made formal demand of American for the full amount of its bond for stated defaults by the principal which occurred between August 21, 1967, and December 29, 1967. At the same time demand was made against Aetna for the full amount of its bond for defaults occurring between November 23, 1967, and December 29, 1967. Aetna paid the full amount of its bond, $55,000.00 to the appellant, but this amount was less than

half of the amount of total claims asserted against the principal. American, apparently, was willing to pay for defaults occurring prior to the issuance of the Aetna bond but not for defaults occurring between November 23, 1967, and December 29, 1967.

American brought this action for declaratory judgment in the district court, alleging that the Aetna bond was a replacement for its bond. It asked for a judgment declaring that liability on its bond ended on November 22, 1967, and that it was not liable for any claims arising on or after November 23, 1967. The appellant filed an answer denying that the Aetna bond was a replacement for the American bond and alleged that the American bond could only be terminated in the manner provided, that is, by giving thirty days' notice in writing to the Packers and Stockyards Administration. By way of a counterclaim, the appellant alleged that all claims on American's bond accrued prior to the effective date of any notice of termination and sought a determination that American's liability continued until thirty days from the Administration's receipt of notice of cancellation. Both parties moved for summary judgment. The district court granted American's motion, holding that its liability terminated as of the effective date of Aetna's bond. The court, in its order, set forth its conclusion that the regulation concerning waiver of the thirty day notice requirement for replacement bonds applied where a new bond was written by a new surety as well as where a renewal bond was written by the original surety. In support of this conclusion, the court observed that "the regulations negate any inference that double coverage was intended for any period of time."

However sound the comment of the district court as to double coverage may be, it is not determinative of the question presented by this appeal. Although it was probably contemplated by the framers of the regulations that there would be but a single bond in force at

any one time, the regulations do not preclude a surety from writing a bond which in its coverage may overlap that of another bond written by another surety.

■ As a general rule, the liability of a surety on a bond which is plain and unambiguous is governed, like any other contract, by the intention of the parties as expressed in the instrument. However, in determining the legal effect of a statutory bond such as is here before the Court, certain rules of construction are to be considered. A statutory bond will be reviewed in the light of the statute creating the duty to give security. It will be generally held that the provisions of the statute and regulations will be read into the bond. Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1919); Whattoff v. United States, C.A. 8, 1966, 355 F.2d 473; Jones v. United States, C.A.8, 1951, 189 F.2d 601. So also, if a statutory bond contains provisions which do not comply with the requirements of law, they may be eliminated as surplusage and denied legal effect. Fort Smith Structural Steel Co. v. Western Surety Co., W.D.Ark., 1965, 247 F.Supp. 674; 12 Am.Jur.2d, Bonds § 26.

Here it is urged by the appellant that the termination clause of the bond is not in conflict with the regulation which contains a waiver of a thirty day notice of termination in the event "the surety writes a replacement bond * * *". The bond in this case has a waiver of the notice requirement in the event "the surety named herein writes a bond to replace this bond * * *". The two are not in conflict. A reading of the regulations, and common meaning given to the words used, discloses no intention to prevent the parties from limiting the waiver of notice of termination to replacement bonds written by the same surety. The regulation does not require the use of any special language, and the parties should neither be faulted nor relieved from liability for making more

explicit that which the regulation prescribes. It would be as reasonable to say that the Aetna bond did not become effective until the American bond had terminated after the thirty day notice as to say that the American bond terminated when the Aetna bond became effective.

■ Even if it be held that the regulation indicates an intent that a bond would not be operative after another bond with another surety has been executed and delivered, or, that the termination clause is at variance with the regulation, the parties would not be precluded from enlarging upon the requirements of the statute and regulations by a bond which extended coverage beyond that which is required. Risks which are not required to be secured by the statute will be deemed covered by a bond given pursuant to the statute if the bond so provides and if enforcement is not contrary to public policy. Francis v. New Amsterdam Co., Mo.App.1966, 407 S.W.2d 631; Fireman's Fund Ins. Co. v. Abilene Livestock Auction Co., Tex.Civ. App.1965, 391 S.W.2d 147. American, in its bond, fixed the time and manner by which its liability would be terminated and it followed that provision in cancelling its bond. There is nothing in the statute, regulations, or public policy which precludes a compensated surety from making a contract such as that made by American and there is no valid reason why it should not be enforced according to its tenor. The liability of American on its bond continued until the date which it fixed in its notice of cancellation. It remained liable for the defaults of its principal until January 18, 1968.

The judgment of the district court must be reversed and the cause remanded for the purpose of establishing the amount of American's liability and the entry of an appropriate judgment against it.

Reversed and remanded.