**INDEX FUND, INC., Plaintiff-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.**

**No. 771, Docket 77–7600.**

United States Court of Appeals, Second Circuit.

Argued March 23, 1978.

Decided Aug. 1, 1978.

Rehearing Denied Sept. 14, 1978.

Charles E. McGuinness, New York City, for plaintiff-appellant.

William P. Sullivan, Jr., New York City (Bigham, Englar, Jones & Houston, New York City), for defendant-appellee.

Jacob H. Stillman, Principal Asst. Gen. Counsel, S.E.C., Washington, D. C. (Harvey L. Pitt, Gen. Counsel, Sue E. Auerbach and John M. Metzger, Attys., S.E.C., Washington, D. C., of counsel), for Securities and Exchange Commission, amicus curiae.

Sullivan & Cromwell, New York City, Marvin Schwartz, Stephen K. West and Ann T. Bailen, New York City, on the brief, for Investment Company Institute, amicus curiae.

Before KAUFMAN, Chief Judge, and SMITH and MESKILL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal in an action on a fidelity bond from a judgment of the United States District Court for the Southern District of New York, Charles H. Tenney, *Judge,* entered for the defendant bonding company notwithstanding the verdict and ordering a remittitur or a new trial in the event this judgment is vacated or reversed. We reverse the judgment *n. o. v.* and affirm the order granting a new trial *nisi.*

Index Fund, Inc. ("Index Fund") is a Massachusetts corporation organized pursuant to the Investment Company Act of 1940 (the "Act"), 15 U.S.C. § 80a–1 *et seq.* Rule 17g–1 of the Securities and Exchange Commission (the "Rule"), 17 C.F.R. § 270.17g–1, promulgated under § 17(g) of the Act, 15 U.S.C. § 80a–17(g), required Index Fund to obtain a fidelity bond against larceny and embezzlement covering those of its officers who had access to its funds or securities or the authority to draw such funds or dispose of such securities. The Rule also required that the bond "shall provide that it shall not be cancelled, terminated or modified except

after written notice shall have been given by the acting party to the affected party and to the Commission not less than 30 days prior to the effectiye date of cancellation, termination, or modification." 17 C.F.R. § 270.17g–1(a).

Over a period of years Index Fund purchased three bonds from Insurance Company of North America ("I.N.A."), a Pennsylvania corporation. The third of these bonds, effective from July 30, 1971 to June 31, 1973, was procured through Bleichroeder Bing & Co., Inc., 127 John Street, New York, New York.[1] Attached to the first two bonds were riders containing the so-called "cancellation clause." The rider accompanying the second of these bonds bore the legend: "For use with brokers' blanket bonds, Forms 14 Basic and 14 Broad, when issued to registered investment companies. To comply with the rules of the Securities and Exchange Commission."

Each of the bonds issued by I.N.A. to Index Fund contained the provisions set out in the margin.[2] Losses up to a monetary limit of $100,000 were covered by each of the bonds.

On November 4, 1969 Robert R. Hagopian was elected president of Index Fund. Hagopian's duties as president included the purchase, sale, delivery and receipt of stocks, bonds and other securities, cash and other forms of investment in the name and on behalf of Index Fund. While he was president, Hagopian bought and sold securities on behalf of Index Fund on many occasions.

Plaintiff's case is based on a claim that on about June 1, 1970, Hagopian was bribed by and entered into a conspiracy with certain persons who were not employees of Index Fund to purchase certain securities at prices which Hagopian knew to be manipulated. From June 16, 1970 to August 6, 1970 Hagopian purchased for Index Fund at inflated prices the securities of various companies, including those of a corporation named Computerized Knitwear, for a total expenditure of funds in the amount of $1,034,840. From September 17, 1970 to December 13, 1972 these securities were sold, after their prices had fallen, for $301,594.

On August 7, 1972 an indictment was returned in the United States District Court for the Southern District of New York against Hagopian and four co-defendants. Named as a co-conspirator but not as a co-defendant was Akiyoshi Yamada, an investment advisor whose activities in the securities markets are not unknown to this court.[3] Count 19 of the indictment charged that Hagopian and one Peter Galanis "unlawfully, wilfully and knowingly, did abstract, convert to their own use, and embezzle monies, funds, securities, credits, property, and assets of . . . Index Fund . . . [on] 8/6/70 . . . [in the amount of] $98,870." On January 22, 1973

---

1. The "principal address" of Index Fund as stated on this bond was 20 Exchange Place, New York, New York. The manager of I.N.A.'s Bond Burglary Department testified at trial that this bond was "written by I.N.A., the New York office of North America" and a senior underwriter of I.N.A.'s Fidelity Burglary Department also testified that this bond was written out of I.N.A.'s New York Office.

2. The losses covered by this bond are as follows:

DISHONESTY
(A) Loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed directly or by collusion with others, including loss of Property through any such act of any of the Employees.

. . . . .

The foregoing agreement is subject to the following conditions and limitations:
Section 1. This bond does not cover:

. . . . .

(e)(1) Any loss resulting directly or indirectly from trading, including all transactions involving the purchase, sale or exchange of securities, with or without the knowledge of the Insured, in the name of the Insured or otherwise, whether or not represented by any indebtedness or balance shown to be due the Insured on any customer's account, actual or fictitious, and notwithstanding any act or omission on the part of any Employee in connection with any account relating to such trading, indebtedness, or balance.

3. See *Rolf v. Blyth, Eastman Dillon,* 570 F.2d 38 (2d Cir. 1978).

Hagopian entered a plea of guilty to Count 19 of the indictment.[4]

On the basis of information in the indictment and in a bill of particulars which followed it, Index Fund later reconstructed the securities transactions mentioned above and filed proof of claim for loss on the bonds. I.N.A. denied liability and this action followed. There was evidence from records of the custodian bank of the purchase of Computerized Knitwear shares for $98,870 and the sale of the same shares for $36,698.

The trial judge charged the jury that to return a verdict for Index Fund, it must find by a preponderance of the evidence that Index Fund suffered a loss, that the loss was caused by Hagopian's acts, and that such acts were dishonest and fraudulent. He further instructed the jury that if it found the fund suffered such a loss that it must then consider "whether the losses fell within a specific exclusion from liability contained in the bond." Section 1(e)(1) was then read to the jury. Finally, the jury was told that if it found that the losses were caused by fraudulent or dishonest acts by Hagopian which did not result from trading, that the jury must determine the amount of Index Fund's loss. During its deliberations the jury requested and received a copy of the indictment to which Hagopian had pled guilty. The jury returned a verdict in favor of Index Fund in the amount of $98,870.

After trial, I.N.A. moved for a judgment notwithstanding the verdict. The court granted this motion on the ground that Index Fund's claim was excluded from coverage because the transactions at issue came within the meaning of "trading" in § 1(e)(1). I.N.A. also moved for a new trial and the court, pursuant to Fed.R.Civ.P. 50(c)(1), decreed that if its judgment was vacated or reversed on appeal that this motion would be granted unless Index Fund agreed to accept a remittitur in the amount of $36,698.[5]

Index Fund appealed and we assumed jurisdiction under 28 U.S.C. § 1291. Briefs were submitted by the Investment Company Institute and by the Securities and Exchange Commission as *amici curiae.*

Index Fund argues on appeal that its losses are not excluded from coverage by virtue of § 1(e)(1) because the transactions were not "trading" within the meaning of that provision. Second, Index Fund argues that even if the transactions were "trading," the provision should be given no legal effect since recovery was sought under a statutory bond for losses as to which the statute requires coverage. Third, it argues that the amount of the award is not excessive, not against the evidence, and not speculative and should therefore be reinstated on remand.[6]

Since this action under the complaint as amended is based on diversity, we apply the

---

4. Hagopian at his sentencing testified as follows:

The Court: Now, as to Count 19, tell me what you did.
A. In Count 19?'
Q. That's the $98,878 we are talking about, since 1970.
A. Yes, sir. That was with respect to the Index Fund, of which I was an executive officer, and I caused securities to be bought for greater than its [sic] actual value at the time, which caused a loss to the mutual fund.
Q. Did you do that intentionally?
A. I did, sir.
Q. Did you know when you did this that this was a breach of your fiduciary duty?
A. Yes, sir.
[Record on Appeal, Plaintiff's Exhibit 45]

5. The trial judge reasoned with respect to the remittitur that "the only loss proved by plaintiff was the $62,172 from the Computerized Knitwear transaction, and any verdict other than that would have been excessive, speculative and contrary to the evidence."

6. I.N.A. argues that the court below was correct in setting aside the verdict because Index Fund's losses resulted from "trading" and that the bond should not be construed so as to read the exclusion out of the bond for to do so would do violence to the language of the bond and disregard entirely the intent of the parties to it. I.N.A. does not address the matter of proof of Index Fund's losses. The Investment Company Institute and the Securities and Exchange Commission assert that the losses allegedly sustained by Index Fund were of the kind against which the Act and the Rule were intended to protect.

substantive law, which includes the conflict of law rules, of the State of New York. See *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Sutro Bros. & Co. v. Indemnity Insurance Co. of North America,* 386 F.2d 798, 801 (2d Cir. 1967); 1A, Part 2, *Moore's Federal Practice* ¶ 0.311.

■ Under New York conflict of law rules, courts when construing the meaning of words in or the validity of a provision in a contract, apply the local law of that state which has the greatest interest in or most significant relationship to the transaction and the parties. See *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382–85, 300 N.Y.S.2d 817, 825–28, 248 N.E.2d 576, 580–82 (1969); *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954). In the case before us the state with the most significant contacts and greatest interest is the State of New York.

■ Where the words in a provision of a fidelity bond are subject to more than one reasonable construction, the courts applying New York law construe such words most favorably to the insured and most strictly against the insurer; see *Cohon v. U.S. Fidelity & Guaranty Co.,* 172 Misc. 51, 13 N.Y.S.2d 976, *aff'd,* 259 App.Div. 707, 19 N.Y.S.2d 144 (1940); *McClare v. Massachusetts Bonding & Ins. Co.,* 366 N.Y. 371, 377, 195 N.E. 15, 17 (1935); *Whitestown v. Title Guaranty & Surety Co.,* 72 Misc. 498, 131 N.Y.S. 390, 393, *aff'd,* 148 App.Div. 900, 132 N.Y.S. 1149, *aff'd,* 209 N.Y. 512, 102 N.E. 1115 (1913), especially where the doubt is found in an exclusionary provision, see *Thomas J. Lipton, Inc. v. Liberty Mutual Ins. Co.,* 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39 (1974); *Sincoff v. Liberty Mutual Fire Ins. Co.,* 11 N.Y.2d 386, 391, 230 N.Y.S.2d 13, 16, 183 N.E.2d

899, 902 (1962). Accordingly, if fairly possible, § 1(e)(1) must be construed against I.N.A. and in favor of Index Fund so as not to exclude Index Fund's losses from coverage. Where, as here, the obligee is a regulated investment company, rather than a broker, fraudulent purchase of securities for the company by the covered employee at a manipulated price may well be considered outside the contemplated meaning of "trading."

Moreover, even if "trading" were ordinarily read to include activities such as Hagopian's, there is another factor present here. The bond at issue is a so-called "statutory bond." Under New York law it must be read in conjunction with the statutory requirements pursuant to which it was issued where, as here, the issuer knew or ought to have known of the statutory provisions. *People v. Metropolitan Surety Co.,* 211 N.Y. 107, 113, 105 N.E. 99, 100–101 (1914); *People v. Condor of Americas, Inc.,* 43 Misc.2d 899, 252 N.Y.S.2d 619, 622 (Sup.Ct. Sp.T. N.Y.Cty. I 1964), *aff'd,* 23 A.D.2d 822, 258 N.Y.S.2d 338 (Sup.Ct.App. Div. 1st Dept. 1965); *Lamb v. U. S. Fidelity & Guaranty Co.,* 162 N.Y.S. 138, 139–40 (Sup.Ct. Trial T. Kgs.Cty. 1916); see *Eckstein v. Massachusetts Bonding & Ins. Co.,* 281 N.Y. 435, 438–39, 24 N.E.2d 114 (1939). Consideration must be given to the language of the statute and the purpose for which the bond is given. *American Casualty Co. of Reading, Penn. v. Irvin,* 426 F.2d 647 (5th Cir. 1970). A principal objective of the Act was "to mitigate and, in so far as is feasible, to eliminate" conditions described therein, such as "when investment companies are organized, operated, managed, or their portfolio securities are selected, in the interest of directors, officers . . . thereof . . . rather than in the interest of . . . such companies' security holders." 15 U.S.C. § 80a–1.[7]

---

7. In hearings before the passage of the Act, the Chief Counsel of the Securities and Exchange Commission, presenting a lengthy report on investment trust and investment company abuses, commented that "[s]ubordination of the interest of the security holders to those of . . . management take many forms. I am not speaking merely of the instances of outright embezzlement. I am referring to the unloading of worthless securities . . . upon the companies." Hearings on S. 3580 before a Subcommittee of the Senate Committee on Banking and Currency, 76th Cong., 3d Sess. at 37 (1940). "[L]ooters" of investment trusts en-

■ We have no doubt that in requiring a bond to provide coverage against losses from "larceny and embezzlement" by an officer of a registered investment company Congress intended such bonds to cover the kind of dishonest and fraudulent activity in which Hagopian engaged. See generally *Brown v. Bullock*, 294 F.2d 415, 418–19 (2d Cir. 1961). Consequently, we conclude that I.N.A. is liable on the bond to Index Fund for those losses it suffered from the dishonest and fraudulent activities of Hagopian.

There remains the question of the order for a new trial *nisi.*

■ Whether the district court abused its discretion in ordering a new trial on the basis of excessive damages is usually considered a matter of federal law. 11 Wright & Miller, *Federal Practice and Procedure*: Civil § 2802 (1973). See *Galard v. Johnson*, 504 F.2d 1198, 1200 n. 1 (7th Cir. 1974). In this circuit it is an open question whether the test for sufficiency of evidence in a diversity case is one of federal or state law. *Mehra v. Bentz*, 529 F.2d 1137, 1139 n. 2a (2d Cir. 1975), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). The trial judge granted I.N.A.'s motion for a new trial because he found the evidence legally insufficient to support the amount of the jury's award. The Tenth Circuit has held that under federal law, "to be insufficient to support a verdict, the evidence must all be one way from which only one reasonable inference can be drawn." *United States v. Hess*, 341 F.2d 444, 448 (10th Cir. 1965). New York's conflict of law rules would direct us to apply New York's local law, *Anderson v. Material Co-ordinating Agency*, 63 N.Y.S.2d 324, 325 (Sup.Ct.1946), pursuant to which a jury verdict should not be set aside unless it is clear from the record that the jury could not have reached its conclusion on any fair interpretation of the evidence. *McMurren v. Carter*, 46 A.D.2d 682, 360 N.Y.S.2d 66, *aff'd* 38 N.Y.2d 742, 381 N.Y.S.2d 42, 343 N.E.2d 760 (1975); *Mallo v. Pembleton*, 38 A.D.2d 874, 329 N.Y.

S.2d 154 (1972). There were losses in securities transactions involving Hagopian in excess of the bond limits of $100,000 and it may be that an inference might have been drawn by the jury that they were all results of his fraud. The inference was not compelled, however, and the precise amount found could only have had reference to one particular transaction. The only direct evidence that Index Fund's losses resulted from dishonest or fraudulent activity by Hagopian was Hagopian's testimony and his plea of guilty to Count 19 which involved only the Computerized Knitwear transaction. This evidence indicates that Index Fund proved losses resulting from Hagopian's dishonest and fraudulent activity of only $62,172, the purchase price of $98,870 less the amount realized on sale of that stock of $36,698. Thus, under either the federal or the state test for sufficiency of evidence, the trial judge cannot be said to have abused his discretion in ordering a new trial unless Index Fund accepts a remittitur of $36,698.

■ Where a motion for a new trial has been conditionally granted by the district court and the judgment reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise. Fed.R.Civ.P. 50(c)(1). For the reasons given above, we hold that I.N.A. is liable on the bond for Index Fund's established losses resulting from Hagopian's dishonest and fraudulent acts, reverse the judgment notwithstanding the verdict, and affirm the district court's order granting a new trial unless Index Fund accepts the remittitur.

Remanded for further proceedings not inconsistent with this opinion.

MESKILL, Circuit Judge, dissenting:

I respectfully dissent. In my judgment, the loss suffered by Index Fund was clearly within the "trading exclusion" of the bond issued by I.N.A. Index Fund could have purchased a more expensive bond which would have protected it from the type of

gaged in such activities had been indicted for larceny. *Id.*, at 64. The Chief Counsel further testified that § 17(g) would help shareholders in investment companies recover their companies' losses resulting from such fraudulent conduct. *Id.*, 53, 61, 73, 80, 264–65.

loss involved here, but it chose not to do so. The majority's use of the provisions of the Investment Company Act to relieve Index Fund of the consequences of its choice is unprecedented and unwarranted.

The insurance contract purchased by Index Fund is a fidelity bond labeled "Brokers' Blanket Bond, Form No. 14." This same bond is issued by I.N.A. to stockbrokers, investment banks and mutual funds. The bond provides in part as follows:

The losses covered by this bond are as follows:

### DISHONESTY

(A) Loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed directly or by collusion with others, including loss of Property through any such act of any of the Employees.

.        .        .        .        .

The foregoing agreement is subject to the following conditions and limitations:

Section 1. This bond does not cover:

.        .        .        .        .

(e)(1) Any loss resulting directly or indirectly from trading, including all transactions involving the purchase, sale or exchange of securities, with or without the knowledge of the Insured, in the name of the Insured or otherwise, whether or not represented by any indebtedness or balance shown to be due the Insured on any customer's account, actual or fictitious, and notwithstanding any act or omission on the part of any Employee in connection with any account relating to such trading, indebtedness, or balance.

Unlike the majority, I do not believe that, at least in its application to the circumstances of this case, this provision is "subject to more than one reasonable construction." *Ante* at 1162. Nor do I believe that this Court should strain to construe the provision against I.N.A.

The bond is clear. Losses resulting from dishonest or fraudulent acts of employees are covered unless they result "*directly or indirectly* from trading, including *all* transactions *involving* the purchase, sale or exchange of securities." (emphasis added). The district court was no doubt correct in its determination that Hagopian's actions were dishonest and that those actions occasioned the loss. It is equally obvious to me that the loss resulted "directly or indirectly" from "trading," *i. e.*, from a transaction "involving the purchase, sale or exchange of securities."

Mr. George F. Hoffman, president of Index Fund, testified that Hagopian had arranged for Index Fund to acquire eight different securities, the aggregate "purchase price" or "cost" of which was over a million dollars. He also testified that the "sale and disposition" of those securities resulted in "aggregate proceeds" amounting to a little over $300,000. The loss, then, was over $700,000. On cross-examination, the following colloquy took place:

Q. And the loss is computed as total loss, the difference between the total price paid for the stock when you bought it and the total price that you got for the stock when you sold it, is that correct?

A. That's correct.

In other words, the loss resulted from "trading" as that term is understood in an entirely ordinary sense—the buying and selling of securities. The fact that the "trading exclusion" is phrased in expansive terms serves only to strengthen my belief that the loss here resulted from precisely the type of activity that the parties intended and understood to be excluded. *See Sutro Bros. & Co. v. Indemnity Insurance Co.*, 264 F.Supp. 273, 289 (S.D.N.Y.), *aff'd*, 386 F.2d 798, 802 (2d Cir. 1967).

The majority concludes that, "[w]here, as here, the obligee is a regulated investment company, rather than a broker, fraudulent purchase of securities for the company by the covered employee at a manipulated price may well be considered outside the contemplated meaning of 'trading.'" *Ante* at 1162. In the early stages of this litigation, however, the district court denied a

motion for summary judgment precisely because it believed that "there was a genuine issue as to the meaning of 'trading' in a brokers' bond when issued to an investment company." At trial, the issue was litigated, and I.N.A. introduced evidence to support the conclusion that in each situation the term "trading" should be given the interpretation offered in the bond itself—"transactions involving the purchase, sale or exchange of securities." No evidence was introduced showing that the term should be interpreted one way for investment companies and another way for brokers. And neither evidence nor argument to that effect is offered here by the majority. In the absence of some persuasive reason to do otherwise, I would conclude that the term has the same meaning regardless of the identity of the plaintiff.

Second, I would not use the Investment Company Act as a device to "bail out" Index Fund from an apparent error in business judgment. Index Fund chose not to purchase a bond that would have covered its loss.[1] The "trading exclusion" of the bond actually purchased by Index contains the proviso that trading losses involving forgery or alteration (Insuring Clause D) and trading losses involving securities forgery (Insuring Clause E) were covered by the bond even though they resulted from trading.[2] The fact that Index Fund declined to purchase a bond that also covered trading losses resulting from employee dishonesty (Insuring Clause A)—no doubt because such a bond would cost substantially more than the bond it purchased—leads me to conclude that Index Fund rather than I.N.A. should absorb the loss resulting from Hagopian's activity. Although the majori-

ty correctly states that the bond "must be read in conjunction with the statutory requirements pursuant to which it was issued" and that "[c]onsideration must be given to the language of the statute and the purpose for which the bond is given," *ante* at 1162, I fear that today's decision gives undue, in fact, controlling, weight to the statute in circumstances involving statutorily required bonds, even to the exclusion of the obvious intent and understanding of the parties to the contract. No court should go that far.

The district court found sufficient evidence to conclude that Index Fund intended to purchase a bond which would conform to § 17(g) of the Act, 15 U.S.C. § 80a–17(g), and the regulation promulgated thereunder, 17 C.F.R. § 270.17g–1. I have no quarrel with this determination. I note also that the Fifth Circuit has made the following suggestion:

> As a general rule, the liability of a surety on a bond which is plain and unambiguous is governed, like any other contract, by the intention of the parties as expressed in the instrument. However, in determining the legal effect of a statutory bond such as is here before the Court, certain rules of construction are to be considered. A statutory bond will be reviewed in the light of the statute creating the duty to give security. It will be *generally* held that the provisions of the statute and regulations will be read into the bond. So also, if a statutory bond contains provisions which do not comply with the requirements of law, they may be eliminated as surplusage and denied legal effect.

---

**1.** The "trading exclusion" in that bond would have read as follows:

Any loss resulting directly or indirectly from trading, including all transactions involving the purchase, sale or exchange of securities, with or without the knowledge of the Insured, in the name of the Insured or otherwise, whether or not represented by any indebtedness or balance shown to be due the Insured on any customer's account, actual or fictitious, *except when covered under Insuring Clause (A), (D) or (E).*

(emphasis added).

**2.** The proviso reads as follows:

If any instrument covered under Insuring Clause (D) or (E) is involved in any trading loss, then this subsection (e) shall not be construed as excluding liability under Insuring Clause (D) or (E) on account of such instrument for the amount recoverable thereunder, but in no event for an amount in excess of the amount applicable under this bond for the payment of such loss.

*American Casualty Co. v. Irvin*, 426 F.2d 647, 650 (5th Cir. 1970) (emphasis added; citations omitted). I doubt that the Fifth Circuit would go as far as today's decision. Here, Index Fund simply failed to meet its obligation under the statute, apparently for purely economic reasons. To read the bond as the majority does is to ignore both the plain language of the bond and the significance of Index Fund's decision to purchase this bond rather than another. Index Fund knew that it was engaged primarily in "trading," and so did the agents who procured this bond on its behalf. The effect of today's decision is to use the statute to give Index Fund precisely that form of additional coverage that it had previously declined to buy. I cannot believe that Congress intended the statute to produce such a result.

I would affirm the decision of the district court and hold Index Fund to its bargain.