# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60168

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2018

Lyle W. Cayce
Clerk

RENASANT BANK,

      Plaintiff - Appellant

v.

ST. PAUL MERCURY INSURANCE COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before DAVIS, HAYNES, and COSTA, Circuit Judges.

HAYNES, Circuit Judge:

A Mississippi statute, Miss. Code Ann. § 81-5-15, requires bank employees to post fidelity bonds that protect against "acts of dishonesty." Renasant Bank did not require its employees to post such bonds. Instead, like most banks today, it purchased a Financial Institution Bond, which covers losses caused by employees only when certain criteria are met ("the Bond"). At issue in this case, *inter alia*, is whether the Bond's criteria improperly limit coverage in light of § 81-5-15's allegedly broad mandate.

Assuming arguendo that the Bond is governed by § 81-5-15, we conclude that the Bond's terms are enforceable as written because they are consistent with the statute. We also agree with the district court's conclusion that

No. 17-60168

Renasant Bank failed to produce evidence necessary to its breach-of-contract claim and, therefore, that St. Paul Insurance Mercury Insurance Co. ("St. Paul Insurance") is entitled to summary judgment. Accordingly, we AFFIRM.

## I.     Factual and Procedural Background

In September 2008, Renasant Bank obtained a Financial Institution Bond from St. Paul Insurance. Relevant to this appeal, the Bond covers "[l]oss resulting directly from . . . [d]ishonest or fraudulent acts committed by an Employee." When losses result directly or indirectly from loans, however, the Bond limits coverage to situations where the employee extending the loan:

> (i)    acted with the intent to cause the Insured to sustain such a loss;
> (ii)   was in collusion with one or more parties to the transaction; and
> (iii)  has received, in connection therewith, an improper financial benefit.

Alternatively, if the employee did not receive "an improper financial benefit," the Bond covers losses resulting from loans if:

> (i)    other persons with whom the Employee was dishonestly or fraudulently acting in collusion received proceeds from the Loan . . . ; and
> (ii)   the Insured establishes that the Employee intended to share or participate in the proceeds of the Loan . . . .

A "financial benefit," the Bond explains, "does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions."

In July 2009, Renasant Bank notified St. Paul Insurance of potential losses resulting from allegedly dishonest or fraudulent lending activities of a former employee ("the Employee"). Renasant Bank apparently learned of these activities upon reviewing certain outstanding loans in late 2007, as the

No. 17-60168

real estate market deteriorated. According to Renasant Bank, in 2006, the Employee approved two multi-million dollar real estate development loans ("the Loans") that she knew were secured by less collateral (i.e., land acreage) than she initially represented to the bank in obtaining the bank's authorization for the Loans. Renasant Bank also claims the Employee knowingly allowed improper loan disbursements to the developers of the land, who provided inadequate documentation verifying the legitimacy of those disbursements.

Renasant Bank submitted a formal claim to St. Paul Insurance for approximately $7.77 million in alleged losses, consisting of the combined outstanding payoff amounts and accrued interest and penalties, which St. Paul Insurance denied. Thereafter, Renasant Bank sued St. Paul Insurance for breach of contract based on the denial of its claim. In its complaint, Renasant Bank claimed that the Employee colluded with one or more of the developers by extending credit for projects which promised the developers substantial front-end profits in exchange for improper financial benefits, such as gifts, entertainment, and travel. But in response to St. Paul Insurance's motion for summary judgment, Renasant Bank did not claim that the Employee received any financial benefits other than the allegedly improper financial benefit in the form of commissions on the Loans.

The district court concluded that the Bond was enforceable as written and that Renasant Bank failed to show that the Employee received "an improper financial benefit," as required and defined by the Bond. The district court thus concluded that the Bond did not cover Renasant Bank's alleged losses as a matter of law, and St. Paul Insurance was entitled to summary judgment. Renasant Bank now appeals the district court's decision.

## II.    Standard of Review

"We review an order granting summary judgment *de novo*, applying the same standards as the district court." *Cooley v. Hous. Auth. of Slidell*, 747 F.3d

3

No. 17-60168

295, 297 (5th Cir. 2014). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Additionally, "[w]e review the district court's interpretation of the bond contract *de novo*." *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1569 (5th Cir. 1996).

## III.  Discussion

### A. *Validity of the Bond*

The parties first dispute whether the Bond's criteria for covering loan losses are legally enforceable. Renasant Bank argues that the Bond is a "statutory bond," meaning a bond required by statute, specifically, Miss. Code Ann. § 81-5-15. It further argues that the Bond's criteria improperly provide less coverage for employee dishonesty than § 81-5-15 allows, and therefore that those criteria are unenforceable.[1] St. Paul Insurance responds that the Bond is fully enforceable because its terms are consistent with § 81-5-15 or, alternatively, because the Bond is not the type of bond contemplated by § 81-5-15, which actually references a bond procured by the employee herself rather than by the bank. We note that Renasant Bank is in the awkward position of asking this court to treat the Bond as one governed by § 81-5-15 based on modern business practice, while simultaneously asking us to ignore modern practice in determining what § 81-5-15 requires. Nonetheless, we conclude that it is unnecessary to decide whether the Bond is a statutory bond required by § 81-5-15 because, assuming arguendo that it is a statutory bond, the terms of the Bond are consistent with the statute.

---

[1] Miss. Code Ann. § 81-5-15 requires bank employees to post fidelity bonds that protect against losses resulting from both their own "acts of dishonesty" and their "violation of any of the provisions of the banking laws of Mississippi." Renasant Bank has not alleged that St. Paul Insurance refuses to cover losses caused by employee violations of state banking laws. Therefore, we do not address this aspect of the statute.

No. 17-60168

When analyzing a statutory bond, we review it "in the light of the statute creating the duty to give security." *Am. Cas. Co. v. Irvin*, 426 F.2d 647, 650 (5th Cir. 1970). "[T]he provisions of the statute and regulations will be read into the bond." *Id.* "[I]f a statutory bond contains provisions which do not comply with the requirements of law, they may be eliminated as surplusage and denied legal effect." *Id.* That is to say, terms that conflict with the relevant statute must be "read out" of a statutory bond.

Section 81-5-15 of the Mississippi Code reads, in relevant part, as follows:

> Every active officer and employee of any bank or trust company in this state shall furnish a fidelity bond to the bank by which he is employed for the faithful performance of his duties, executed by some surety company authorized to do business in the State of Mississippi, as surety. The conditions of such bond, whether the instrument so describes the conditions or not, shall be that the principal shall protect the obligee against any loss or liability that the obligee may suffer or incur by reason of the acts of dishonesty of the principal or by reason of the violation of any of the provisions of the banking laws of Mississippi. The amount of such bond shall be fixed by the board of directors, subject, however, to approval of the state comptroller and the same shall be inspected upon the examination of the bank or trust company.
>
> Every banking corporation shall provide adequate insurance protection and indemnity against robbery and burglary and other similar insurable losses.

There are no Mississippi court cases interpreting § 81-5-15. But the Mississippi Supreme Court has taken a similar approach to other types of statutory bonds as we have, asking whether a statutory bond's terms conflict with the statute before declaring them unenforceable. *See State v. Moody*, 198 So. 2d 586, 588–89 (Miss. 1967); *Adams v. Williams*, 52 So. 865, 868–69 (Miss.

5

No. 17-60168

1910); *see also Commercial Bank of Magee v. Evans*, 112 So. 482, 483 (Miss. 1927) (stating that the court will "write into" a statutory bond any missing conditions required by the governing statute).

Section 81-5-15 of the Mississippi Code requires that fidelity bonds obtained pursuant to the statute "shall protect . . . against any loss . . . incur[red] by reason of the acts of dishonesty" of covered bank employees. Renasant Bank argues that the Bond violates the plain meaning of § 81-5-15. We disagree.

First, the statute requires "fidelity bond[s]" as protection against employee dishonesty. Consistent with this policy, the Bond's criteria for covering loan losses define "dishonesty" in a way that preserves "the distinction between fidelity insurers (who cover embezzlement and embezzlement-type acts) and credit insurers." 10-112 New Appleman on Insurance Law Library Edition § 112.07[1] (2017) (discussing the similar criteria of the industry's standard insurance policy form, Financial Institution Bond Standard Form No. 24); *see also Calcasieu-Marine Nat'l Bank of Lake Charles v. Am. Emp'rs Ins. Co.*, 533 F.2d 290, 299 (5th Cir. 1976) (stating that a banker's blanket bond under Louisiana law "is not a policy of credit insurance and does not protect the bank when it simply makes a bad business deal"); *Fed. Deposit Ins. Corp. v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1036–37 (6th Cir. 1991) (concluding that a similar bank bond covered losses caused by an employee's intent to defraud her employer, not losses caused by overreaching or "reckless and imprudent" business judgment); *Glusband v. Fittin Cunningham & Lauzon, Inc.*, 892 F.2d 208, 210–12 (2d Cir. 1989) (limiting similar bond provisions' coverage to embezzlement or "embezzlement-like" acts).

More specifically, requiring intent to cause the bank a loss distinguishes the employee who "may use fraudulent documents for loans, believing that they would be successfully paid," from the truly unfaithful employee who

intends to cheat the bank. *See Lustig*, 961 F.2d at 1166. Collusion with others is a function of lending with such dishonest intentions and thus is a reasonable construction of the statute's requirement to cover dishonesty. *See* 10-112 New Appleman on Insurance § 112.07[1] (stating that collusion is "a hallmark of embezzlement or embezzlement-type activity"). Similarly, requiring receipt of a financial benefit outside the employee's normal compensation scheme, or an intent to share in loan proceeds, excludes from coverage situations where employees act imprudently to boost their employer's profits, reflecting bad business judgment rather than a disposition to steal from the bank. *See id.* ("[B]ank employees (and people in general) typically do not steal for others without any quid pro quo."). The only circuit court to also consider this issue in analyzing a very similar state statutory requirement likewise concluded that such bond provisions were consistent with the statute. *See First Dakota Nat'l Bank v. Saint Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 808 (8th Cir. 1993).

Second, as our sister circuit also indicated, approval by state banking regulators supports a conclusion that a bond is legally enforceable under state law. *See id.* Here, § 81-5-15 states that the amounts of bonds obtained pursuant to the statute are "subject . . . to approval of the state comptroller and the same shall be inspected upon the examination of the bank." Given the absence of evidence that the state has found bonds similar to the Bond to violate the statute,[2] we conclude that this factor supports St. Paul's argument.

Third, a contrary interpretation is less compatible with the reason for the statute in the first place, which is generally, as both parties agree, to protect the state's banking system. *Cf. Moore v. Bank of Indianola Liquidating*

---

[2] The Bond's disputed criteria closely resemble that contained in the standard industry policy, Standard Form No. 24, which banks throughout the nation widely use. *See* 10-112 New Appleman on Insurance § 112.01.

No. 17-60168

*Corp.*, 184 So. 305, 307 (Miss. 1938) (stating that the state's banking laws were established "for the benefit of the depositors, creditors, and stockholders of the banks").[3]  If we were to read Mississippi law as requiring coverage for all employee losses, we would read out the limitation that the Bond cover "dishonesty."  Ignoring this limitation greatly magnifies the risk to the insurance company and the perverse incentives for banks to act in a risky fashion knowing all losses would be covered.  *Cf. Glusband*, 892 F.2d at 212 (observing that an expansive understanding of employee dishonesty coverage in the securities trading context would encourage greater moral hazard than one limited to covering embezzlement); RICHARD S. CARNELL, JONATHAN R. MACEY & GEOFFREY P. MILLER, THE LAW OF FINANCIAL INSTITUTIONS 281–82 (5th ed. 2013) (explaining how insurance encourages moral hazard, which is "one of the most crucial economic concepts in banking policy").  This is why "[p]rivate insurance markets have developed various mechanisms to reduce moral hazard," such as excluding from coverage acts of self-injury.  CARNELL, MACEY & MILLER, *supra*, at 282.  Indeed, the risk of loan-related losses would otherwise be too high to profitably insure against; insurers would leave the market or raise premiums substantially.  *See* 10-111 New Appleman on Insurance Law Library Edition § 111.01[7][a][i] (2017); 10-112 New Appleman on Insurance § 112.02; 11-138 New Appleman on Insurance Law Library Edition § 138.01[2] (2017) ("Surety bonds, unlike traditional insurance products, are written with an expectation of zero loss.  Accordingly, a surety

---

[3] Miss. Code Ann. § 81-5-15 was enacted in 1934, a year after the nation's banking system collapsed after a wave of preceding panics. *See* RICHARD S. CARNELL, JONATHAN R. MACEY & GEOFFREY P. MILLER, THE LAW OF FINANCIAL INSTITUTIONS 18–20 (5th ed. 2013). Although the statute's recorded history is lacking, the timing of its enactment and general mandate indicate a policy of protecting the state's banking system.

bond will only be provided to a person or entity that has demonstrated the ability to perform the bonded obligations.").

Reviewing the Bond in light of the statute and the above considerations, we conclude that the district court properly gave full effect to the Bond's criteria for covering loan-related losses.

## B. *Summary Judgment*

The district court determined that Renasant Bank's breach-of-contract claim failed as a matter of law because the bank did not produce any evidence that the Employee received an improper financial benefit, as the Bond requires. Renasant Bank does not appeal the district court's conclusion that it failed to provide evidence of the Employee receiving improper gifts, entertainment and travel, as originally alleged in its complaint. We therefore turn to Renasant Bank's argument that the Employee's commissions on the Loans are an "improper financial benefit."

Financial Institution Bonds are a form of insurance contracts between the insurer and insured, and are thus subject to the general rules of contract interpretation. *See Calcasieu-Marine Nat'l Bank*, 533 F.2d at 295 (construing bankers blanket bond as an insurance contract); *ACS Constr. Co. of Miss. v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003) ("Under Mississippi law, an insurance policy is a contract subject to the general rules of contract interpretation.") (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So. 2d 779, 781 (Miss. 1998)); *see also Irvin*, 426 F.2d at 650 ("[T]he liability of a surety on a bond which is plain and unambiguous is governed, like any other contract, by the intention of the parties as expressed in the instrument."); 10-111 New Appleman on Insurance Law § 111.01[2]–[3]. We must consider the insurance contract "as a whole, with all relevant clauses together." *U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). "No rule of construction requires or permits [Mississippi courts] to make a contract differing from that made by

No. 17-60168

the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007) (alterations in original) (quoting *State Auto. Mut. Ins. Co. of Columbus v. Glover*, 176 So. 2d 256, 258 (Miss. 1965)).

Under the Bond, "financial benefit does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions." Renasant Bank argues this language excludes only commissions that are "earned in the normal course." Because the Employee here allegedly obtained commissions through dishonest and fraudulent acts, Renasant Bank says those commissions were not "earned in the normal course," and therefore, they count as an improper financial benefit that triggers coverage under the Bond.

We disagree with Renasant Bank's strained reading. The phrase "earned in the normal course" plainly modifies the phrase "employee benefits." The two phrases go together and identify a general category (i.e., "employee benefits earned in the normal course"). Then, "including:" signals that what follows are specific examples of "employee benefits earned in the normal course." Therefore, commissions are a specific example of "employee benefits earned in the normal course."[4] As this court has explained in another case involving a very similar provision: "The language excluding salaries [and commissions, fees, bonuses, etc.] presumes that there are acts of employee dishonesty that result in increased employee benefits that the insured and insurer agreed to exclude from coverage." *Performance Autoplex II. Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 858 (5th Cir. 2003) (per curiam); *see also*

---

[4] Renasant Bank argues that this reading renders "earned in the normal course of employment" superfluous. We disagree. The phrase gives specificity to the meaning of "employee benefits," distinguishing benefits or anything of value received by employees that are part of the bank's usual compensation scheme from those that are not.

No. 17-60168

*Watson Quality Ford, Inc. v. Great River Ins. Co.*, 909 So. 2d 1196, 1200 (Miss. Ct. App. 2005).

We therefore agree with the district court that the Bond does not count commissions as the type of financial benefit that triggers coverage. This interpretation is the most natural way to read the Bond and is consistent with what other circuit courts have concluded in construing such language. *See R & J Enterprizes v. Gen. Cas. Co. of Wis.*, 627 F.3d 723, 726–28 (8th Cir. 2010); *Resolution Tr. Corp. v. Fid. & Deposit Co. of Md.*, 205 F.3d 615, 645–48 (3d Cir. 2000); *Mun. Secur., Inc. v. Ins. Co. of N. Am.*, 829 F.2d 7, 9–10 (6th Cir. 1987) (per curiam); *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co.*, 801 F.2d 1560, 1567 (9th Cir. 1986); *see also* 10-112 New Appleman on Insurance § 112.06[3] (summarizing the majority rule on the issue).

Renasant Bank next argues that the "financial benefit" issue does not dispose of its claim, because the Bond has an alternative coverage provision. Under this provision, where an employee does not receive an improper financial benefit, the Bond may still cover loan-related losses if the employee colluded with others who received loan proceeds and the employee "intended to share or participate in" those proceeds. The district court did not rule on this alternative ground, but "[w]e may affirm on any grounds supported by the record, even if those grounds were not relied upon by the lower courts." *In re Plunk*, 481 F.3d 302, 305 (5th Cir. 2007).

As a threshold matter, Renasant Bank is incorrect that St. Paul Insurance never moved for summary judgment on this issue. St. Paul Insurance's filings in support of summary judgment expressly asserted, and presented affirmative evidence indicating, that Renasant Bank was unable to show "improper financial benefit or an established intent to share in the loan proceeds."

11

No. 17-60168

The Employee denied any such intent, and Renasant Bank failed to proffer any competent summary judgment evidence that would support a finding that the Employee intended to share in the Loans' proceeds.  Indeed, Renasant Bank admitted that it had no non-speculative evidence that the Employee intended to share in the Loans' proceeds.  When asked in a deposition whether there was any such proof "beyond speculation and a theory," the bank's representative replied, "Nothing in our hands today." Renasant Bank also acknowledged that, despite issuing a number of third-party subpoenas, it had no documents showing that the Employee had the requisite intent.  On this record, Renasant Bank has not provided sufficient evidence to raise a genuine issue of material fact regarding the Employee's intent to share or participate in the Loans' proceeds.

## IV.

For the forgoing reasons, we AFFIRM summary judgment in favor of St. Paul Insurance.