IRVING, J.,
for the Court.
¶ 1. Watson Quality Ford (Watson Quality) appeals from a summary judgment granted against it by the Circuit Court of the First Judicial District of Hinds County in a dispute with Great River Insurance Company (Great River) regarding coverage under an insurance policy issued by Great River to Watson Quality. Watson Quality asserts that the circuit court erred in granting summary judgment against it *1198 because there exist genuine issues of fact regarding coverage under the insurance policy.
¶ 2. We find, that summary judgment was proper; therefore, we affirm the decision of the circuit court.
FACTS
¶ 3. On May 29, 1999, Christopher Redmond (Redmond) filed a complaint against Watson Quality Ford, Ted and Ruth Redmond, Ford Motor Credit, and East Ford. In the complaint, Redmond alleged that in early 1994, he purchased a 1994 Ford Tempo GL from East Ford, Inc. and had the vehicle financed with Mississippi Finance Service. In November 1994, he went on active duty with the military, and Ted and Ruth Redmond agreed to keep the Ford Tempo GL and make the payments on it as they came due. However, in June 1995, Ted and Ruth advised Redmond that they had returned the Ford Tempo GL to the financing entity and that no charges or fees were owed.
¶ 4. In July 1995, Redmond was denied credit because of slow payment or nonpayment on a 1995 Ford Windstar van. He then learned that Ted and Ruth were in possession of the Ford Windstar van. Upon Redmond’s confronting Ted and Ruth about the situation, they assured him that they would have the matter cleared up and the paperwork to the Ford Winds-tar changed to their names. Ted and Ruth later advised Redmond, however, that in order for them to return the Windstar van, it was necessary that he give them a power of attorney. Redmond executed a power of attorney for that limited purpose.
¶ 5. In mid-1996, Redmond was again denied credit. He learned this time that the denial of credit was due to late payment or nonpayment not on a 1995 Ford Windstar van, but on a 1996 Ford Winds-tar van.
¶ 6. The complaint also alleged that Ted and Ruth altered the power of attorney which Redmond signed. That power of attorney specifically stated that the 1995 Ford Windstar van would be returned, not sold or traded on Redmond’s behalf in order to purchase another vehicle.
¶ 7. The complaint further alleged that the conduct of Ted and Ruth, “in conjunction with the defendants, East Ford, Inc., and Watson Quality Ford, Inc., of forging and preparing fraudulent documents in conjunction with Ford Motor Credit Company whereby the defendants, Ted Redmond and Ruth Redmond, purchased vehicles and leased vehicles in ... [Redmond’s] name [was] fraud” and that East Ford and Watson Quality “knew that the documents were not signed by [Redmond] and that [Redmond] was not the party conducting business with [East Ford and Watson Quality].”
¶ 8. Finally, the complaint alleged that as a result of the aforementioned actions, Redmond had suffered a substantial loss of credit and had been denied access to credit.
¶ 9. After being served with Redmond’s complaint, Watson Quality contacted Great River and made a claim for coverage and a defense against Redmond’s lawsuit. Great River denied coverage but defended Watson Quality against Redmond’s complaint under a reservation of rights. Great River then filed a motion for a declaratory judgment that the claims made by Redmond against Watson Quality were not covered by the policy issued by Great River to Watson Quality and that Great River owed no duty to Watson Quality to defend against Redmond’s lawsuit. Great River subsequently filed a motion for summary judgment, alleging essentially what it had *1199 alleged in its complaint for declaratory judgment.
¶ 10. The circuit court granted Great River’s motion for summary judgment, finding that the insurance polices did not provide coverage for Redmond’s claims and that Great River had no duty to defend Watson Quality. Disagreeing with the decision of the circuit court, Watson Quality has prosecuted this appeal.
STANDARD OF REVIEW
¶ 11. “This Court conducts a de novo review of orders granting or denying summary judgment and looks at all of the evidentiary matters before it, viewing the evidence in the light most favorable to the non-moving party.” Robinson v. Mississippi Valley Gas, 760 So.2d 41(¶ 4) (Miss.Ct.App.2000).
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 12. Watson Quality argues that the circuit court erred in granting Great River’s motion for summary judgment because “the language in the insurance policy is at best ambiguous as to whether the policy provides coverage for a claim brought by a third party.” Watson Quality also argues that since Great River prepared the insurance policy, any ambiguities are to be resolved in favor of Watson Quality. Watson Quality final argument is that even if the policy does not provide third party coverage, there is still coverage under the policy because it could suffer a direct loss resulting from Redmond’s claims. Watson Quality relies upon the “Forgery or Alteration” and “Employee Dishonesty” provisions of the policy for support of its argument that the policy provides coverage.
¶ 13. Great River first contends that provisions in the “General Exclusions” and “General Conditions” of the policy preclude any coverage. Great River next contends that the policy provides only first party coverage under the “Forgery and Alteration” and “Employee Dishonesty” provisions; that neither the lease nor the power of attorney is a covered instrument as defined in the policy; and that, assuming the policy covers claims by third parties, there is no “covered property” or “employee dishonesty.” Lastly, Great River contends that the policy specifically excludes loss resulting from dishonest or criminal acts committed by an employee.
¶ 14. In its opinion and order, the trial court held that there was no coverage for Christopher Redmond’s claims under the “Forgery or Alteration” and “Employee Dishonesty” provisions of the policy in question because the policy provided only first party coverage, not third party coverage, and even if the policy provided third party coverage, the allegations of Redmond’s complaint “do not fall within either of the two coverage parts.” We agree.

1. First party insurance coverage

¶ 15. The trial court correctly recognized the distinction between first party and third party insurance coverage. “First party coverage is a promise by an insurer to pay its own insured, rather than a promise to its insured to pay a third party.” Bausch & Lomb, Inc. v. Utica Mutual Ins. Co., 355 Md. 566, 735 A.2d 1081, 1090 (1999) (quoting Reese v. State Farm Mut. Auto. Ins., 285 Md. 548, 403 A.2d 1229, 1231 (1979)).
¶ 16. The relevant general employee dishonesty provisions of the Great River policy provide for first party, not third party coverage. The policy expressly states that Great River will not pay either for indirect loss resulting from payment of damages of any type for which Watson Quality is legally liable, or for any expenses related to any legal action. Fur *1200 ther, the property covered by the policy is limited to property that Watson Quality owns or holds or property for which Watson Quality is legally liable.
¶ 17. In Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois, 140 F.3d 622 (5th Cir.1998), the Fifth Circuit Court of Appeals examined a case involving employee dishonesty and an insurance policy with language almost identical to the Great River policy in this case. The court concluded that employee dishonesty policies “do not serve as liability insurance to protect employers against tortious acts committed against third-parties by employees.” Id. at 629.
¶ 18. We find that the trial court properly determined that the policy language in this case does not cover Redmond’s claims against Watson Quality for employee dishonesty.

2. Employee dishonesty coverage

¶ 19. Watson Quality argues that its policy with Great River provides coverage for the claims made by Redmond because the power of attorney and the lease are “covered property” as defined in the policy. “Covered property” is defined to include “money,” “securities,” and “property other than money and securities.” “Securities” is defined in the policy as “negotiable and non-negotiable instruments or contracts representing either money or other property.” The “employee dishonesty” coverage requires Great River Insurance to pay for loss of, and damage to, covered property caused by employee dishonesty.
¶ 20. “Employee dishonesty” is defined in the policy as follows:
“Employee Dishonesty”... means only dishonest acts committed by an employee, whether identified or not, acting along [sic] or in collusion with other persons, ... with the manifest intent to: (1) cause you [Watson Quality] to sustain loss; and also (2) obtain financial benefit {other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for: (a) the employee or (b) any person or organization intended by the employee to receive that benefit. (emphasis added).
¶ 21. Redmond’s compliant against Watson Quality does not allege any loss of money, securities, or property belonging to Watson Quality because of the dishonesty of an employee, although, as already mentioned, Watson Quality argues that there is a potential for it to lose money as a result of Redmond’s lawsuit.
¶ 22. It is arguable that the lease falls within the definition of “securities,” and is thus “covered property,” as defined in the policy. But there is no need for us to make this determination because even if the lease is “covered property” and if Watson Quality eventually suffers a loss because of the lease, we do not find that such loss would be caused by “employee dishonesty” as that phrase is defined in the policy, for there is no allegation in Redmond’s complaint that a Watson Quality employee acting alone, or in collusion with the Red-monds, committed any act with the manifest intent of causing a loss to Watson Quality or to obtain a financial benefit for the employee or for the Redmonds. Such would be required under the terms and conditions of the policy before coverage would be available. The only financial benefit identified by Watson Quality is the commission which, presumably, was received by the salesperson involved in the transaction with the Redmonds. “Commissions” are expressly excluded under the policy from being considered as a benefit. Therefore, we affirm the decision of *1201 the trial court granting summary judgment on this issue.

S. Forgery or alteration coverage

¶ 23. Watson Quality Ford next argues that Great River’s insurance police provides coverage for the allegations made by Christopher Redmond under the forgery or alteration provision because the power of attorney and the lease are “covered instruments” and that Ted and Ruth Redmond, without his permission, altered the wording of the power of attorney that he signed. This alteration allowed them to illegally lease a vehicle in his name from Watson Quality. Clearly, the lease does not fall within the definition of “covered instruments” as defined in the “Forgery and Alteration” coverage form. “Covered instruments” are defined as “checks, drafts, promissory notes, similarly written promises, orders or directions to pay a sum certain in money.” Additionally, these instruments must be “made or drawn by or drawn upon” Watson Quality Ford or made or drawn by one acting as its agent. Further, it is not alleged that the lease was altered in any way. While it is alleged that the lease was executed pursuant to an altered power of attorney, this is not an allegation that the lease, itself, was forged or altered in any respect.
¶24. Likewise, the power of attorney falls outside of the definition of “covered instruments” as defined in the policy, for it is not a check, draft, promissory note, or order to pay a sum certain in money. Consequently, we find, as already noted, no merit to Watson Quality’s argument that the lease and power of attorney are covered instruments within the meaning of the forgery and alteration provisions.
¶ 25. The “Forgery or Alteration Coverage Form” provides that Great River “will not pay for loss resulting from any dishonest or criminal act committed by any of [Watson Quality’s] employees.... ” Clearly, any arguable claim that Watson Quality has must pass through the portal of the employee dishonesty provision. And since the policy excludes coverage for losses resulting from any dishonest or criminal act committed by any of Watson Quality’s employees, it is impossible to discern how the employee dishonesty provision and the forgery and alteration provision can provide a basis for Watson Quality’s contention that coverage is available because of these provisions. Surely, without a doubt, if Watson Quality and East Ford forged or fraudulently prepared documents to allow the Redmonds to purchase and lease vehicles, as Redmond’s complaint alleges, the forgery and fraudulent preparation had to be done by an employee since both Watson Quality and East Ford are corporations. Watson Quality’s attempt to explain why the exclusion does not preclude coverage — “[t]he employee did not sign the lease and therefore has not committed a dishonest or criminal act regarding the forged lease”— is both perplexing and unpersuasive. We, therefore, affirm the decision of the trial court granting summary judgment on this issue.
A The duty to defend or indemnify
¶ 26. Under Mississippi law, “the general rule is well settled that the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action.” Southern Farm Bureau Cas. Ins. Co. v. Logan, 238 Miss. 580, 119 So.2d 268, 271 (1960). There are no allegations in Redmond’s complaint which would implicate coverage under the policy issued by Great River to Watson Quality. Further, as previously discussed, the Great River policy expressly precludes payment of damages and legal expenses. Therefore, *1202 we affirm the decision of the trial court granting summary judgment on this issue.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.