# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41232

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2016

Lyle W. Cayce
Clerk

JEANETTE LIVEZEY, Individually, and as Representative of the Estate of
William Howard Livezey, Jr., deceased; WILLIAM HAROLD LIVEZEY;
SUSAN IRENE DAVIS; JOHN W. LIVEZEY; SANDRA L. HARTGERS,

> Plaintiffs - Appellants

v.

THE CITY OF MALAKOFF; BILLY MITCHELL, Chief of Police for the City
of Malakoff, in his individual capacity,

> Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:14-CV-523

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit
Judges.

PER CURIAM:[*]

In 2013, police officer Ernesto Fierro, who was not in uniform, pulled
over a pickup truck driven by 70-year-old William Howard Livezey, Jr.  Some
witnesses described Fierro as acting extremely aggressively toward Livezey.
Livezey suffered a heart attack and died.  Fierro later pled guilty to aggravated

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-41232

assault and official oppression. The plaintiffs brought suit, arguing the City of Malakoff and its police chief were liable for failing to screen Fierro during hiring, and for failing to train and supervise Fierro. The district court entered summary judgment for the defendants on the basis of qualified immunity and that there was no municipal liability. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2013, at 7 a.m., William Howard Livezey, Jr., was driving his pickup truck on Texas State Highway 31 in Navarro County, Texas. He was 70 years of age. Officer Ernesto Fierro was traveling on the same road by motorcycle as he was returning home from work with the Malakoff Police Department. He was off-duty and in plain clothes.

Fierro stated he observed Livezey make "an aggressive lane change into [his] lane," almost striking him. Fierro then stated he observed Livezey make several more aggressive driving maneuvers, forcing him off the highway and onto the shoulder multiple times. Other witnesses refuted this account. One witness stated that Fierro almost ran the witness off the road and was driving erratically across all lanes of the highway, not letting other drivers pass. Another witness corroborated this account, stating that "[t]he driver of the motorcycle then got in front of [Livezey's] truck and slowed down to approximately 25–35 mph weaving back [and] forth and riding down the middle of the highway not allowing the driver or any other vehicles to continue at highway speeds."

Fierro and Livezey eventually pulled over. Two officers, Warren and Lewis, arrived on the scene. They saw Fierro acting "aggressive[ly]" and "threatening[ly]" towards Livezey, who was standing on the side of the road in handcuffs. Livezey looked "bewildered," "distraught," and "scared." The officers described Fierro's as being "out of control," that he was in "a fit of rage"

2

and acting in a manner "unbecoming of a peace officer." Moreover, despite repeated requests by the officers for Fierro to identify himself (as he was in plain clothes), Fierro failed to do so. It was only after Fierro was threatened with arrest did he tell the officers that he was an off-duty police officer. The two officers then observed Livezey having labored breathing, turning blue, and clutching his chest. The officers called for paramedics. Livezey later died at the hospital. Livezey's treating cardiologist explained that he died of a heart attack induced by emotional and physical stress.

Fierro has a disciplinary record as a police officer. Prior to being hired by the Malakoff Police Department, Fierro worked for the Dallas Police Department. He was terminated by the Dallas Police Department when he rear-ended another vehicle, fled the scene at over 100 mph, subsequently caused another accident, and then filed a false report. Fierro appealed, and his punishment was reduced to a suspension. Fierro, however, voluntarily retired as he was under investigation for other disciplinary matters. He was then hired by the Ferris Police Department, and later terminated under similar circumstances. In sum, his employment history reflects repeated disciplinary actions for vehicle accidents, violations of vehicular chase policies, and filing of false reports. As for the events related to Livezey's death, Fierro was indicted on charges of aggravated assault with a deadly weapon, reckless driving, and official oppression. Fierro accepted a plea deal and was sentenced to nine years' deferred adjudication, fines and court costs, and community service. He was also required to surrender his Texas Peace Officer's License permanently.

Livezey's widow, Jeanette, and his children William, John, Susan, and Sandra, brought suit, asserting claims against the defendants for improper hiring, and failure to train and supervise. The parties consented to proceed before a magistrate judge. Both parties moved for summary judgment. The

magistrate granted the defendants' motion in its entirety, concluding there was no municipal liability as to the City and Police Chief Billy Mitchell was entitled to qualified immunity.  The plaintiffs appealed.

## DISCUSSION

A grant of summary judgment is reviewed *de novo*, applying the same standard as the district court. *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).  The plaintiffs advance four points of error, including that the district court incorrectly granted summary judgment for the defendants on the: 1) improper hiring claim, 2) failure to train claim, 3) failure to supervise claim, and 4) the qualified immunity defense.  The plaintiffs' claims one through three all depend on municipal liability.  Therefore, we address that question before turning to qualified immunity.

### I.    *Municipal Liability*

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  Additionally, "[t]he policymaker must have either actual or constructive knowledge of the alleged policy" to be held liable. *Cox v. City of Dallas*, 430 F.3d 734, 748−49 (5th Cir. 2005).  The last element ensures causation between the policy and the alleged violation leading to liability.  Obviously, the Supreme Court has erected a high bar to fulfilling this causation requirement.  *See Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 415 (1997).

In *Brown*, Sheriff Moore of Bryan County, Oklahoma, hired Stacy Burns, the son of his nephew, as a reserve deputy. *Id*. at 401.  "Burns had a record of driving infractions and had pleaded guilty to various driving-related and other

misdemeanors, including assault and battery, resisting arrest, and public drunkenness." *Id.* The plaintiffs alleged that Burns's actions during a traffic stop caused them injury; they sued the County under the same theory as this case, namely, improper hiring and failure to train. *Id.* at 399–400. The Court held that even if "Sheriff Moore's assessment of Burns'[s] background was inadequate [and] . . . . Sheriff Moore's own testimony indicated that he did not inquire into [Burns's background,] . . . . this showing of an instance of inadequate screening is not enough to establish 'deliberate indifference.'" *Id.* at 411. The Court further noted that "deliberate indifference" is only met where "the plainly obvious consequence" of hiring would be the violation of a person's constitutional rights. *Id.* Thus, *Brown* made clear that only when the defendant is deliberately indifferent, such that a constitutional violation is a plainly obvious consequence of his decisions, will causation exist.

Applying the deliberate indifference standard to the case before us, we determine the plaintiffs are unable to carry this heavy burden.

First, we address screening. Before hiring Fierro, Chief Mitchell reviewed Fierro's personal history disclosure forms, requested prior employment records, did a background investigation, and called the Dallas and Ferris police departments. Given that *Brown* held that an almost complete lack of an investigation was not enough to show deliberate indifference, Chief Mitchell's investigation in this case precludes a determination of deliberate indifference. While the plaintiffs rely on Fierro's prior disciplinary record as an officer in Dallas and Ferris, it cannot be said it was plainly obvious that his hiring would cause the specific constitutional violation in question. We have held that failing to respond to a history of "bad or unwise acts" that "demonstrate lack of judgment, crudity, and, perhaps illegalities" is not enough for deliberate indifference. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (quotation marks omitted).

Next, regarding failure to train, the plaintiffs must show: (1) the City's "training policy or procedure was inadequate"; (2) "the inadequate training policy was a 'moving force' in causing a violation of the plaintiff's rights"; and (3) the City "was deliberately indifferent in adopting its training policy." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). There is no indication the City's training was inadequate. Each Malakoff police officer was required to meet state requirements established by the Texas Commission on Law Enforcement ("TCOLE"). The plaintiffs provided no evidence or argument that any officer hired by Malakoff, including Fierro, failed to meet these requirements. The meeting of state standards means there can be no liability unless the plaintiff shows "that this legal minimum of training was inadequate . . . ." *Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). The plaintiffs provided no evidence, and indeed offered no argument, that the TCOLE standards are inadequate. In any case, there is no evidence that the City or Chief Mitchell deliberately failed to train officers or were indifferent to the need for additional police policies and regulations.

The plaintiffs finally argue that Chief Mitchell and the City failed to supervise Fierro adequately. For municipal liability to rest on this ground, the plaintiffs must show that "(1) the supervisor . . . failed to supervise . . . the subordinate official; (2) a causal link exists between the failure to . . . supervise and the violation of the plaintiff's rights; and (3) the failure to . . . supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001).

The plaintiffs allege that a prior traffic-stop incident involving Fierro is enough to establish a pattern of misconduct or violations of which the City or

No. 15-41232

Chief Mitchell were deliberately indifferent. This prior stop, though, did not result in a complaint being filed against Fierro. Further, while the evidence of this stop suggests that Fierro overreacted, the situation did not involve an arrest, any physical force or reckless driving on the part of Fierro, and the driver that was pulled over admitted that he unintentionally cut Fierro off and was going 75 mph in a 50-mph zone. The events are dissimilar enough not to establish a pattern of violations by Fierro. Regardless, a single prior instance would not establish a pattern.[1]

The district court properly found no municipal liability for the City.

## II. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). To establish that qualified immunity does not apply, the plaintiffs must prove that Chief Mitchell "(1) violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *See id.* at 371. A "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). Thus, qualified immunity in the context of this case means that the plaintiffs must prove that no official standing in the place of Chief Mitchell could have reasonably believed that his hiring, training, and supervision of Fierro was lawful.

---

[1] The plaintiffs also argue that Fierro's prior disciplinary record at the Dallas and Ferris Police Departments can help establish a pattern of misconduct. As discussed in the Facts section, however, Fierro's prior record indicates sustained complaints for violations of vehicular chase policies and the filing of false reports. The current case deals mainly with unlawful arrest and excessive force. Fierro's prior record, therefore, does not establish a pattern of violations relevant to this case.

7

No. 15-41232

The plaintiffs fall short of defeating the defense of qualified immunity. The plaintiffs rehash the same arguments made above for municipal liability. Because we have already determined that the actions of Chief Mitchell did not create liability, the plaintiffs fail in proving that Chief Mitchell acted unreasonably in hiring, training, and supervising Fierro.

AFFIRMED.