# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 6, 2020

No. 19-50737

Lyle W. Cayce
Clerk

JANE DOE, now known as M.E.,

Plaintiff–Appellant,

v.

EDGEWOOD INDEPENDENT SCHOOL DISTRICT,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before OWEN, Chief Judge, and HIGGINBOTHAM and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

Under the Supreme Court's decision in *Gebser v. Lago Vista Independent School District*, a school district is not liable under Title IX for teacher-on-student harassment unless the district, among other things, had "actual notice" of the misconduct and was "deliberately indifferent" to it.[1] As for actual notice, it is not enough the misconduct is reported to *any* employee. The reported-to employee must "at a minimum ha[ve] authority to institute

---

[1] 524 U.S. 274, 277 (1998).

No. 19-50737

corrective measures on the district's behalf."[2] As for deliberate indifference, it is a "high bar"—"neither negligence nor mere unreasonableness is enough."[3]

This tragic case concerns a high school student who endured two years of repeated, and repulsive, employee-on-student misconduct. Worse, Doe was abused by *two* school employees, a school peace officer and a teacher, both of whom were later criminally prosecuted. Student-plaintiff Jane Doe asserted Title IX and constitutional claims, but the district court, applying settled precedent, granted summary judgment to the school district. Having carefully reviewed the record in light of the parties' extensive briefs, oral argument, and governing law, we affirm.

## I. BACKGROUND

### A.    Factual Background

In 2012, Doe enrolled as a freshman at Memorial High School, part of Edgewood Independent School District. Soon after, Manuel Hernandez—one of Memorial's two peace officers—began sexually harassing Doe.[4] Specifically, Hernandez detained Doe in his on-campus office, professed his feelings for her, and touched and groped her. The following year, Marcus Revilla—Doe's chemistry teacher—also began sexually harassing her. The misconduct escalated, and Doe became pregnant with Revilla's child in December 2013 or January 2014. The record indicates that Hernandez discovered this abuse but did nothing to report or stop it. Instead, Hernandez leveraged his knowledge of Revilla's abuse to coerce Doe into sexual acts with him too.

---

[2] *Id.* at 277.

[3] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Davis ex rel. Lashonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642, 648 (1999)).

[4] This opinion uses the phrase "sexual harassment" as an umbrella term that may or may not include sexual assault.

2

This abuse of Doe continued until March 2014, when both Revilla and Hernandez were arrested. Hernandez was found guilty of sexual assault of a child. And Revilla pleaded guilty to state and federal charges related to his relationship with Doe and possession of obscene material.

## B.    Current Lawsuit

Doe sued EISD[5] under Title IX of the Education Amendments of 1972 and 42 U.S.C. § 1983, alleging that Hernandez and Revilla sexually abused her while she was a student at Memorial and that EISD responded with deliberate indifference to this known abuse. Doe alleges that, while she was being sexually harassed and abused, school personnel received several reports, but EISD employees failed to respond adequately.

After multiple amended complaints and dismissal of some claims and parties, EISD moved for summary judgment on the remaining claims—a Title IX sexual harassment claim and § 1983 substantive due process claims based on (1) failure to train school district employees regarding sexual harassment or abuse, (2) insufficient sexual harassment and child abuse policies, and (3) insufficient employee hiring policies and practices.

Regarding EISD's hiring policies and practices, Doe argues that their inadequacy resulted in the hiring of Hernandez despite the obvious risk he posed to students like Doe. In particular, the record shows that Hernandez, while serving the San Antonio Police Department in 1983, was arrested for "official oppression" of a minor he had arrested.[6] The SAPD suspended him

---

[5] Doe originally sued EISD, EISD's police department, EISD's Memorial High School, and former EISD employees Revilla and Hernandez. Doe dismissed Revilla and Hernandez. And the district court dismissed all claims against EISD's police department and Memorial High School, leaving EISD as the sole defendant. Doe did not challenge these dismissals on appeal.

[6] "Official oppression" covers a broad array of conduct. *See* TEX. PENAL CODE § 39.03 ("(a) A public servant acting under color of his office or employment commits an offense if he: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure,

after determining that he violated department regulations by sexually assaulting the minor. But Hernandez was ultimately found not guilty of the criminal charge. The record also shows that Hernandez has been arrested on another, unrelated occasion. Plus, the record indicates that after twenty-two years at SAPD, Hernandez worked for the University of the Incarnate Word and Texas State University Police Departments, where he caused concern and/or was disciplined for sexual harassment or advances on a colleague, though there's no evidence that EISD was aware of these concerns.

The district court granted summary judgment for EISD on the Title IX claim[7] and the § 1983 failure-to-train and sexual-harassment-policy claims. But the district court denied summary judgment on Doe's § 1983 claim based on EISD's hiring of Hernandez. EISD filed a motion for reconsideration, arguing that Doe had failed to establish a genuine dispute of material fact as to municipal liability. The district court reversed course and agreed with EISD, issuing a final judgment on all claims, including the hiring claim. Doe timely appealed.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, applying the same standard as the district court[8] and viewing the evidence "in the light most favorable to the non-moving party."[9] Summary judgment must

---

dispossession, assessment, or lien that he knows is unlawful; (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or (3) intentionally subjects another to sexual harassment.").

[7] When granting summary judgment for the Title IX claim, the district court gave Doe thirty days for additional discovery to obtain admissible evidence showing a genuine factual dispute as to the timing of alleged "notice" of sexual harassment and to move for reconsideration of summary judgment, but Doe did not do so.

[8] *Hagen v. Aetna Ins. Co.,* 808 F.3d 1022, 1026 (5th Cir. 2015).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party.[11] And in Title IX cases, the Supreme Court has expressly noted the appropriateness of pretrial dismissal in certain cases: "there is no reason why courts, on a motion . . . for summary judgment, . . . could not identify a response as not 'clearly unreasonable' as a matter of law."[12]

## III. DISCUSSION

### A.    Employee-on-student sexual harassment claims under Title IX

Title IX states that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."[13] Passed under Congress's Spending Clause authority,[14] Title IX is contractual in nature, not banning discrimination outright but "conditioning an offer of federal funding on a promise by the recipient not to discriminate."[15] Put simply, there are strings attached. And if a school that receives federal funding violates the "no sex discrimination" condition, it may be held liable for money damages.[16]

The Supreme Court in *Gebser* defined the contours of Title IX liability. And it did so carefully, given the statute's contractual framework. Essentially,

---

[10] FED. R. CIV. P. 56(a); *see also Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006).

[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[12] *Davis*, 526 U.S. at 649; *see also Sanches*, 647 F.3d at 168 (citation omitted).

[13] 20 U.S.C. § 1681(a).

[14] U.S. CONST., Art. I, § 8, cl. 1.

[15] *Gebser*, 524 U.S. at 286.

[16] *See Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 74, 76 (1992); *see also Davis*, 526 U.S. at 642 (noting that a plaintiff may obtain damages "where the funding recipient engages in intentional conduct that violates the clear terms of the statute").

schools are liable only for *intentional* sex discrimination.[17] And while Title IX covers "diverse forms" of such of discrimination[18]—including the despicable conduct that occurred here—it is not easy to prove an intentional violation of Title IX. Boiled down, Title IX requires actual notice to an "appropriate person" and "an opportunity for voluntary compliance."[19]

*First, "actual knowledge."* Under *Gebser*, a school district cannot be liable in damages for a teacher's sexual harassment of a student unless "an official [with] authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination . . . and fails adequately to respond."[20] And for the district to have knowledge, it is not enough that *any* employee knew of the harassment; it must be someone authorized to rectify it.[21]

*Second, "deliberate indifference."* Even if the school district knew about employee-on-student misconduct, the district cannot be liable unless its response amounted to "deliberate indifference."[22] And as we have observed, "[t]he deliberate indifference standard is a high one."[23] For example, liability does not attach where the official with authority to take corrective action

---

[17] *Gebser*, 524 U.S. at 290; *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (concluding that a showing of intentional discrimination is required for recovery under Title IX).

[18] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005). Importantly, the Supreme Court has explicitly recognized that "sexual harassment can constitute discrimination on the basis of sex under Title IX." *Gebser*, 524 U.S. at 283 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)).

[19] *See Gebser*, 524 U.S. at 275, 288, 290; *see also* 20 U.S.C. § 1682.

[20] 524 U.S. at 290.

[21] *Id.*

[22] *Id.*

[23] *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (quotation marks and citation omitted).

responds reasonably to a risk of harm, "even if the harm ultimately was not averted."[24]

Doe falters out of the gate. She cannot show that a district official with the power to take corrective action had actual knowledge of the harassment.[25]

### 1. Officer Hernandez is not an "appropriate person" for purposes of Title IX.

As for Doe's Title IX claim, the chief issue on appeal relates to the actual-knowledge requirement. EISD doesn't contest that Hernandez (the peace officer) knew that Revilla (the teacher) was abusing Doe. Nor does EISD contest that Hernandez responded with deliberate indifference. But it is a district's *own* misconduct—not the actions of its students, rank-and-file employees, or other third parties—that exposes it to liability under Title IX.[26] Doe must first prove that an official *with authority to take corrective action on behalf of EISD* had actual knowledge of the harassment. *Gebser* refers to such an official as an "appropriate person,"[27] and that's issue one: whether Hernandez constitutes an "appropriate person."

Doe argues that Hernandez was an "appropriate person" because (1) EISD's peace officers had authority to monitor the criminality of all EISD personnel, so Hernandez supervised Revilla, and (2) Hernandez had authority to arrest Revilla, so he had authority to institute corrective measures on the district's behalf. This reasoning is unpersuasive.

First, the power to enforce the law does not automatically make Hernandez Revilla's "supervisor." Under Doe's logic, Hernandez would be the supervisor of every EISD employee—including the superintendent. Plus, in the

---

[24] *Id.*

[25] *Gebser*, 524 U.S. at 290.

[26] *See id.*; *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 660 (5th Cir. 1997).

[27] *Gebser*, 524 U.S. at 290.

employment-discrimination context, the Supreme Court has defined a "supervisor" as someone the employer has authorized to take "tangible employment actions"—"*i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, [or] reassignment."[28] Hernandez had no power to do any such thing. In fact, under Texas law, Hernandez cannot hire or fire employees.[29] Bottom line: Hernandez was not Revilla's "supervisor."

Second, arresting Revilla is not the equivalent of instituting corrective measures on behalf of EISD. Determining whether someone is an official with authority to institute corrective measures is a fact-specific inquiry.[30] To begin with, the State—not EISD—empowered Hernandez to arrest, and any arrest he made would be on the State's behalf.[31] So arresting someone could not be a

---

[28] *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). Although the Supreme Court provided this definition in the vicarious liability employment discrimination context, and there is no vicarious liability here, the definition is persuasive.

[29] TEX. EDUC. CODE § 11.1511(b)(7) (requiring the school board to make termination decisions for any contract employees); *id.* § 21.002 (requiring school districts to employ each classroom teacher, principal, librarian, nurse, or school counselor under a contract).

[30] *See Rosa H.,* 106 F.3d at 660 ("We do not wish to restrict the applicability of our analysis by keying liability to certain job titles within the school system."); *see also Doe v. Sch. Bd. of Broward Cty.,* 604 F.3d 1248, 1256 (11th Cir. 2010) ("[W]e also note that the ultimate question of who is an appropriate person is 'necessarily a fact-based inquiry' because 'officials' roles vary among school districts.'") (quoting *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1247 (10th Cir. 1999)).

Because it's a fact-based inquiry, Doe argues that the district court erred in determining that Hernandez was not an "appropriate person"; rather, she argues, it's a question of fact for the jury. But this argument is unavailing because it conflates a fact-based inquiry with a question of fact. Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.

[31] *See* TEX. CODE CRIM. PROC. art. 14.02 (establishing under what circumstances a peace officer can arrest someone without a warrant); *id.* art. 15.17 (explaining duties of officer arresting individual pursuant to a warrant).

corrective action *on behalf of the school district*, as *Gebser* requires.[32] And this requirement underscores the ultimate purpose of the "appropriate person" inquiry: to determine whether Hernandez's knowledge of Revilla's sexual abuse "is functionally equivalent to the school district's actual knowledge."[33]

As we have explained, to be an "appropriate person" under Title IX, the official must have authority to both "repudiate th[e] conduct *and* eliminate the hostile environment."[34] The power to arrest someone is not the same as the ability to eliminate a hostile environment. For example, even if Hernandez had arrested Revilla for abusing Doe, Revilla may have been released or posted bail. In that case, Revilla could have returned to work at Memorial unless a different EISD official—an actual "supervisor"—suspended or terminated him. And myriad courts have recognized that the power to institute corrective measures must include the power to terminate or discipline.[35] As discussed,

---

[32] *See* 524 U.S. at 290.

[33] *Rosa H.*, 106 F.3d at 660; *see also Baynard v. Malone*, 268 F.3d 228, 238–39 (4th Cir. 2001) (citing *Rosa H.*, 106 F.3d at 660) (explaining the "appropriate person" inquiry should elucidate "whether a supervisory employee may be viewed as the proxy of the school district"); *Floyd* v. *Waiters*, 171 F.3d 1264, 1264 (11th Cir. 1999) (concluding that an "appropriate person" for purposes of Title IX liability is a "supervisor with authority to take corrective action" who is "a school official high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct.").

[34] *Rosa H.*, 106 F.3d at 661 (emphasis in *Rosa H.*) (quoting *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993) (per curiam)).

[35] *See, e.g.*, *Blue v. D.C.*, 850 F. Supp. 2d 16, 34–35 (D.D.C. 2012), *aff'd*, 811 F.3d 14 (D.C. Cir. 2015) ("[I]n the context of student-teacher sexual harassment, the 'authority to take corrective action' means the ability to fire or discipline the teacher in question."); *Sh. A. ex rel. v. Tucumcari Mun. Sch.*, No. CV 00-727 JP/DJS-ACE, 2002 WL 35650031, at *7 (D.N.M. Apr. 19, 2002) (finding that an employee with authority to make recommendations to the board "regarding the hiring, terminating, suspending, and transferring of teachers" was an appropriate person, but an employee without that authority was not); *Nelson v. Lancaster Indep. Sch. Dist. No. 356*, No. CIV 00-2079 (JRT/RLE), 2002 WL 246755, at *5 (D. Minn. Feb. 15, 2002) (explaining that, "[i]n cases since *Gebser*, courts have strictly interpreted this element, requiring that the official in question be capable of terminating or suspending the individual," and concluding that a teacher was not an appropriate person to receive actual notice of school bus driver's alleged harassment of student).

No. 19-50737

Hernandez had no such power.[36] Nor did Hernandez have the power to reformulate district sexual harassment policies or publicly "repudiate th[e] conduct."[37]

Plus, though Hernandez had the duty and authority to take action to stop crimes occurring on campus, such a duty is imposed—at least in some form (for example, reporting obligations)—on the vast majority of school employees.[38] So, as the district court noted, "extending 'appropriate persons' under Title IX to include any individual who is authorized and/or instructed to take any action to halt abuse from a law enforcement perspective or otherwise would result in nearly every district employee being covered by the analysis."

---

[36] And "[t]o the extent that [district] policy indicates that campus-security officers would *begin* the [district's] 'corrective processes,' that fact would not justify treating the officers as appropriate persons for purposes of Title IX." *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1291−92 (10th Cir. 2017) (emphasis added).

[37] *See Rosa H.*, 106 F.3d at 661; *see also, e.g.*, *Joyce v. Wright St. Univ.*, No. 3:17-CV-387, 2018 WL 3009105, at *9 (S.D. Ohio June 15, 2018) ("[A]lthough a campus police officer is, in one sense, empowered to take 'corrective action' with respect to a sexual assault, he or she has no authority to reformulate sexual harassment policies on behalf of the university to end discrimination on campus. Accordingly, notice to a campus police officer does not constitute 'actual notice' for purposes of Title IX."); *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1352 n.43 (M.D. Ga. 2007) ("While a campus police officer is certainly empowered to halt a sexual assault that occurred immediately in front of him, he does not have the power or responsibility to reformulate University sexual harassment policy. Therefore, the Court concludes that if the only person who had knowledge of this attack was a Mercer police officer, that is insufficient to give the University actual notice of the alleged attack.").

[38] But the ability or obligation to report sexual harassment does not qualify an employee as having the ability to institute corrective measures on behalf of the funding recipient. *See Plamp* v. *Mitchell Sch. Dist. No. 17–2,* 565 F.3d 450, 459 (8th Cir. 2009) ("After all, each teacher, counselor, administrator, and support-staffer in a school building has the authority, if not the duty, to report to the school administration or school board potentially discriminatory conduct. But that authority does not amount to an authority to take a corrective measure or institute remedial action within the meaning of Title IX. Such a holding would run contrary to the purposes of the statute."); *see also Santiago* v. *Puerto Rico,* 655 F.3d 61, 75 (1st Cir. 2011) ("The empty allegation that a school employee 'failed to report' harassment to someone higher up in the chain of command who could have taken corrective action is not enough to establish institutional liability. Title IX does not sweep so broadly as to permit a suit for harm-inducing conduct that was not brought to the attention of someone with the authority to stop it.") (citation omitted).

10

And this result is incompatible with Title IX's existing liability framework. Indeed, we have long held that, generally, the "bulk of employees" are *not* covered for purposes of a district's "notice" under Title IX.[39]

As the district court explained, EISD peace officers are generally "like the vast majority of other school employees, in the sense that (1) they have no discretionary authority with respect to the district's sexual harassment policies designed to end discrimination on campus, and (2) their day-to-day actions do not generally constitute 'official decisions' by the district." For example, rank-and-file employees such as peace officers generally cannot bind the institution. Specifically, under Texas law, Hernandez could not sign a contract on EISD's behalf,[40] receive or hold real or personal property or funds on EISD's behalf,[41] or be assigned *any* administrative tasks.[42] And, as discussed, under Texas law, Hernandez could not hire or fire teachers.[43] Recognizing these similarities to other rank-and-file employees, numerous courts have held that "notice" of sexual harassment or abuse provided only to a police or security officer is insufficient to impute actual knowledge to the school district or university for purposes of Title IX.[44]

---

[39] *Rosa H.,* 106 F.3d at 660; *see also Corp. of Mercer Univ.*, 506 F. Supp. 2d at 1352 n.43 (explaining that teachers, coaches, and school employees are not generally "appropriate individuals" for purposes of notice under Title IX).

[40] *See* TEX. EDUC. CODE § 11.1511(c) (authorizing the board of trustees of a school district to "enter into contracts as authorized under this code or other law and delegate contractual authority *to the superintendent* as appropriate" (emphasis added)).

[41] *Id.* § 11.151(a).

[42] *Id.* § 37.081(d-2).

[43] *Id.* §§ 11.1511(b)(7) (requiring the board to make termination decisions for any contract employees), 21.002 (requiring school districts to employ each classroom teacher, principal, librarian, nurse, or school counselor under a contract).

[44] *See Ross,* 859 F.3d at 1288−92 (finding that report of sexual assault to university's security officer did not constitute "notice" for purposes of Title IX); *Joyce v. Wright State Univ.,* No. 3:17-CV-387, 2018 WL 3009105, at *9 (S.D. Ohio June 15, 2018) (same, with

No. 19-50737

The district court, agreeing with the other courts that have addressed the issue, held that Hernandez did not fit the category of employee intended to be an "appropriate person" under Title IX. In particular, the district court emphasized that Doe presented no evidence that the Board's "practical control" over Hernandez was "sufficiently close," such that his acts "reflect[ed] [EISD's] intentional discrimination."[45] We agree.[46]

Ultimately, Doe's theory regarding "notice" to Hernandez fails as a matter of law because he's not an "appropriate person" for purposes of Title IX. We thus affirm the district court's grant of summary judgment on that basis.

### 2. EISD did not have knowledge of prior acts of sexual harassment that provided actual knowledge of a risk of substantial harm under Title IX.

As Doe points out, some courts have interpreted *Gebser*'s requirement that an "appropriate person" must have "actual knowledge of discrimination in

---

respect to report of sexual assault to university police officer); *Corp. of Mercer Univ.,* 506 F. Supp. 2d at 1352 n.43 (same).

[45] *See Rosa H.*, 106 F.3d at 660.

[46] And even if Hernandez had authority to institute corrective measures, he would not be an "appropriate person" in this case. *See Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 275 (5th Cir. 2017) ("We conclude that the judicially implied private right of action under Title IX does not impose liability on a school district when the only employee or representative of the district with actual knowledge of the molestation was the perpetrator himself, even if the perpetrator had authority to institute corrective measures on behalf of the district to end discrimination by other individuals or in the school's programs."). The Supreme Court has explained that "[w]here a school district's liability rests on actual notice principles, [] the knowledge of the wrongdoer himself is not pertinent to the analysis." *Gebser*, 524 U.S. at 291. Doe argued—and the district court agreed—that this rule only applies to the wrongdoer's knowledge of his own wrongdoing. Indeed, the facts here do not map perfectly onto *Salazar* because there were not one but two employees sexually harassing Doe. But Hernandez could not be expected to arrest Revilla or report Revilla's sexual misconduct with Doe because Hernandez would have feared that doing so would lead to discovery of his own misconduct with the same student. So notice to Hernandez under these circumstances is not meaningful notice to EISD such that it had an opportunity to remedy the discrimination, which is essential for Title IX liability. *See Salazar*, 953 F.3d at 280 ("[A]t its core, the implied Title IX remedy that the Supreme Court recognized depends on meaningful notice to a funding recipient so that it will have an opportunity to remedy the discrimination.").

12

*the recipient's programs*"[47] to mean that "the Court implicitly decided that harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX."[48] Leaning heavily on *Escue*,[49] a Tenth Circuit case, Doe argues that EISD's knowledge of (1) Hernandez's 1983 arrest for official oppression, and (2) the January 2013 report of a student at Revilla's home both constitute prior acts of sexual harassment that gave EISD actual knowledge of a substantial risk of harm under Title IX. We address each argument in turn.

### a. Officer Hernandez's arrest for "official oppression"

First, Doe argues that the district court "erred because it failed to consider" EISD's knowledge of Hernandez's 1983 arrest for "official oppression," which she claims constitutes actual knowledge of a risk of substantial harm to students like Doe. But Doe did not urge this theory in her response to EISD's motion for summary judgment.[50] Because Doe failed to raise this issue before the district court, it is forfeited on appeal.[51]

### b. January 2014 investigation of Revilla

Second, Doe argues that Principal Rodriguez had actual knowledge stemming from an investigation into and suspension of Revilla about two months prior to his ultimate arrest. The record shows that, in January 2014, EISD received a report from Revilla's ex-girlfriend that a male student had

---

[47] *Gebser*, 524 U.S. at 290 (emphasis added).

[48] *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006).

[49] *See id.*

[50] Nor did Doe allege in her Second Amended Complaint that any EISD employee had actual notice of Hernandez's 1983 arrest for official oppression and responded with deliberate indifference by hiring him in 2012. In fact, Doe failed to raise any Title IX claims premised on Hernandez's 1983 arrest or on the hiring of Hernandez.

[51] *See Tex. Commercial Energy v. TXU Energy, Inc.,* 413 F.3d 503, 510 (5th Cir. 2005); *Horton v. Bank One, N.A.,* 387 F.3d 426, 435 (5th Cir. 2004).

been dropped off at Revilla's residence. EISD suspended Revilla while it investigated the report. The investigation revealed that the student's parent gave him permission to go to—and dropped him off at—Revilla's home to work on a project for a school pep rally, which Revilla supervised. As such, the investigation was inconclusive, and EISD reinstated Revilla. The district court concluded that "the January 2014 incident is not the type that would place [EISD] on notice that Revilla was engaged in sexual relations with students, and certainly not with respect to [Doe]." So it determined that the January 2014 incident did not provide EISD with notice for purposes of Revilla's abuse of Doe. We agree.

In *Gebser*, the Supreme Court stated that one report of a teacher making inappropriate comments "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student."[52] Likewise, one report that a male student came to Revilla's home was insufficient to alert EISD that Revilla was in a sexual relationship with a female student.[53] In fact, the January 2014 report had nothing to do with Doe—or any female student—and there was no evidence of sexual misconduct. Rather, the male student involved had parental permission and was engaged in a school-related project. This investigation did not yield information suggesting Revilla posed a substantial risk of sexual abuse. At bottom, Doe's argument is constructive notice by another name.[54] And the Supreme Court

---

[52] *Gebser*, 524 U.S. at 291.

[53] *See Escue*, 450 F.3d at 1154 (finding that the school lacked actual knowledge that a professor posed a substantial risk of sexually harassing students despite knowing that the professor had consensually dated two former students near his age and was accused a decade prior of a single incident of inappropriate touching and name-calling, which he acknowledged should stop).

[54] Although Doe invokes the actual knowledge standard, she's really implying that, because Revilla had—in her words—an "under-aged homosexual male . . . at his home after school hours," EISD *should have known* that he posed a substantial risk of sexual abuse.

has clearly rejected that standard in favor of actual notice.[55] So we agree with the district court on this issue.[56]

## B.     EISD does not have "municipal liability" under § 1983.

### 1. EISD's Hiring Policies

Finally, Doe advances multiple theories as to why EISD has "municipal liability" pursuant to 42 U.S.C. § 1983. First, Doe argues that EISD has municipal liability because its hiring policy lacked specific requirements about how to analyze an applicant's arrest record, which "constrained" hiring officials.

Under *Monell v. Department of Social Services of City of New York*[57] and its progeny, a claim of "municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[58] "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[59] To that end, § 1983, like Title IX, does not impose

---

[55] *See Gebser*, 524 U.S. at 290.

[56] Without alleging facts demonstrating actual notice of a substantial risk of sexual harassment, Doe criticizes EISD's investigation into the January 2014 report, arguing that its "inconclusive[ness]" and lack of written findings indicate that EISD's response was unreasonable. Essentially, Doe argues that EISD should not have allowed Revilla to return to the classroom. But even if EISD had made "a tragic error in judgment," that "does not create a genuine issue of material fact as to whether [an official] acted with deliberate indifference." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). And "Title IX does not require flawless investigations or perfect solutions." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011).

[57] 436 U.S. 658 (1978).

[58] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

[59] *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

liability on school districts for an employee's tort under a *respondeat superior* liability theory—but only for "their *own* illegal acts."[60] So to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury.[61]

First, EISD's Board of Trustees is the final policymaker in this case. "[W]hether an official had final policymaking authority is a question of state law."[62] And "Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees."[63]

Next, we look to whether the Board had an official policy for screening applicants and hiring employees when Hernandez was hired in June 2012.[64] Indeed, the Board had such an official policy. It included DAC (Local), which established objective hiring criteria, and DBAA (Legal), which described employment restrictions and requirements, such as obtaining criminal history records and fingerprints of employees.[65]

Finally, Doe must prove that this official policy was the "moving force" behind the violation of her constitutional rights.[66] Here, there's no dispute that

---

[60] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Pembaur*, 475 U.S. at 479); *see also Monell*, 436 U.S. at 691.

[61] *Brown*, 520 U.S. at 400, 403 (citing *Monell*, 436 U.S. at 694).

[62] *Pembaur*, 475 U.S. at 483.

[63] *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (citing TEX. EDUC. CODE § 23.01 (recodified at TEX. EDUC. CODE § 11.051)); *see also* TEX. EDUC. CODE § 11.151.

[64] An official policy is "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] or by an official to whom the [entity] ha[s] delegated policy-making authority." *Leal v. Wiles*, 734 F. App'x 905, 907 (5th Cir. 2018) (per curiam) (unpublished) (alterations in original) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)).

[65] The Board adopted both documents on May 15, 2012, about a month before Hernandez was hired.

[66] *Monell*, 436 U.S. at 694.

the sexual abuse Hernandez perpetrated on Doe violated her constitutional rights.[67] But this third element—causation—proves fatal to Doe's argument. EISD's hiring policy was not the "moving force" behind Hernandez's unconstitutional actions.

"Moving force" causation is more than "but for" causation.[68] Doe must show that the final policymaker had the requisite degree of culpability and that EISD's policies were the actual cause of the constitutional violation.[69] She has not. When it comes to the "moving force" behind the sexual abuse of Doe, we agree with the district court that Hernandez's misconduct was the actual cause of the violation. Arguably, the hiring administrator's choice to hire Hernandez without further investigation of his employment and criminal history was negligent. But EISD cannot be held liable for an employee's negligence under a *respondeat superior* theory.[70]

### 2. Hiring of Officer Hernandez

Doe also argues that the hiring administrator's decision to hire Hernandez constitutes a district policy that triggers municipal liability under § 1983. The district court disagreed. And so do we.

True, we have recognized that "a single decision by a policymaker may, under certain circumstances, constitute a policy for which [a municipality] may

---

[67] We have held that "[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994) (quotation marks and citation omitted). And "[i]t is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild." *Id.* at 451.

[68] *Valle v. City of Houston*, 613 F.3d 536, 546 (5th Cir. 2010).

[69] *See id.*

[70] *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (explaining that § 1983 "[m]unicipal liability cannot be sustained under a theory of *respondeat superior*") (citation omitted).

be liable."[71] But a plaintiff who brings a claim pursuant to this "extremely narrow" "single incident exception"[72] must show (1) the hiring decision was made by a final policymaker, and (2) a "plainly obvious consequence of the decision" is a constitutional violation.[73]

As for the first prong—the hiring decision must be made by a final policymaker—it's critical to distinguish between "an exercise of *policymaking authority* and an exercise of *delegated discretionary policy-implementing authority*."[74] The former can trigger § 1983 municipal liability; the latter cannot. Here, a hiring administrator screened Hernandez's application and decided to hire him. Unlike the Board, this administrator is not a final policymaker;[75] rather, he or she has only been delegated discretionary policy-implementing authority. By limiting the single decisions that trigger municipal liability to those made by final policymakers, we avoid imposing *respondeat superior* liability, which the Supreme Court has rejected in the § 1983 context.[76] That should be the end of the inquiry: The "single decision exception" does not apply.

But even assuming that Doe satisfied the first requirement, she fails on the second. Specifically, a plaintiff must show deliberate indifference—that a

---

[71] *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000).

[72] *Valle*, 613 F.3d at 542 (explaining that "this 'single incident exception' is extremely narrow").

[73] *Brown*, 520 U.S. at 411; *Livezey v. City of Malakoff*, 657 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (unpublished).

[74] *Brown*, 520 U.S. at 434 (emphasis in original); *see also Bolton v. City of Dallas*, 541 F.3d 545, 548–49 (5th Cir. 2008).

[75] *See Jett*, 7 F.3d at 1245; *see also* TEX. EDUC. CODE §§ 11.051, 11.151.

[76] *Brown*, 520 U.S. at 405; *see also Triplett v. D.C.*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) ("The only acts that count (though they may include inaction giving rise to or endorsing a custom) are ones by a person or persons who have 'final policymaking authority [under] state law.'") (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *Blue*, 850 F. Supp. 2d at 27.

constitutional violation is a plainly obvious consequence of the final policymaker's decision.[77] To do so, Doe must provide evidence to show "a strong connection between the background of [Hernandez] and the specific violation alleged," such that he "was highly likely to inflict the particular type of injury suffered."[78] Doe has failed to meet this burden.

Consider the information the hiring administrator had in June 2012. Hernandez was arrested for official oppression in 1983, acquitted the following year, rehired by the City of San Antonio Police Department, and then served over twenty-seven years in law enforcement and became a master peace officer prior to applying to EISD. Hernandez's criminal record didn't provide any detail about the alleged conduct underlying his 1983 arrest. Hernandez provided two of three requested references, his immediate past supervisor and his brother, both of whom responded positively. Are there red flags in his application? Yes. But that's not enough to attribute deliberate indifference to EISD. The information about Hernandez reviewed at the time of hiring simply does not show the requisite "strong connection" between an arrest in 1983 for official oppression and sexual abuse thirty years later—especially when viewed in light of existing caselaw.

Both the Supreme Court and this court have declined to find liability under § 1983 where a local governmental entity hired an officer with one or more prior arrests (including those of a sexual nature), the hiring official failed to investigate the unspecified conduct underlying the arrest(s), and/or the hiring official failed to follow-up with prior employers from which the applicant

---

[77] *Brown*, 520 U.S. at 411.

[78] *Rivera v. Bonner*, 952 F.3d 560, 565 (5th Cir. 2017) (quoting *Gros v. City of Grand Prairie*, 209 F.3d 431, 434 (5th Cir. 2000)) (quotation marks omitted).

had been terminated.[79] Like the hiring officials in *Brown* and *Rivera*, EISD's hiring administrator hired someone with an arrest record without seeking information about the underlying conduct. And like the hiring official in *Hardeman*, EISD's hiring administrator hired someone without contacting the employer who previously fired him. Arguably, in all these cases, the hiring official inadequately assessed an application and made a poor hiring decision. But "[a] showing of simple or even heightened negligence will not suffice."[80]

As the Supreme Court has cautioned, "predicting the consequence of a single hiring decision, even one based on an inadequate assessment of a record, is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties."[81] "Where a claim of municipal liability rests on a single decision

---

[79] For example, in *Brown*, the Supreme Court held that a sheriff was not deliberately indifferent in hiring a police officer who allegedly used excessive force during an arrest, despite having a criminal record indicating he pled guilty to several misdemeanors—assault and battery, resisting arrest, and public drunkenness—during college. 520 U.S. at 413, 415–16. Although the sheriff obtained the criminal history report when screening the applicant, he "did not inquire into the underlying conduct or the disposition of any of the misdemeanor charges." *Id.* at 401, 411. The Court explained that although the sheriff's screening could be considered inadequate, the officer's use of excessive force was not "a plainly obvious consequence of the hiring decision." *Id.* at 411. So, the Court determined that the "link between the officer's prior convictions and his use of excessive force was too tenuous to show that the sheriff had disregarded a known or obvious risk of injury." *Rivera*, 952 F.3d at 565 (citing *Brown*, 520 U.S. at 412, 415).

We have ruled similarly in hiring-focused § 1983 cases involving allegations of sexual assault. *See id.* at 564−66 (collecting cases); *id.* at 566−67 (holding that "a jury could not find that a plainly obvious consequence of hiring [a jailer] was that he would sexually assault a detainee"—despite the jailer's prior arrests for indecency with a child by sexual contact—where his record provided no detail about his alleged offenses, and there was no evidence of conviction); *Hardeman v. Kerr County*, 244 F. App'x 593, 594−96 (5th Cir. 2007) (per curiam) (unpublished) (finding no constitutional violation where a county hired a jailer after conducting a background investigation but didn't contact his previous employer where he had been fired for "making improper advances towards high school (female) students," and the jailer later forcibly raped an inmate).

[80] *Rivera*, 952 F.3d at 565 (quoting *Brown*, 520 U.S. at 407).

[81] *Brown*, 520 U.S. at 410.

. . . the danger that a municipality will be held liable *without fault* is high."[82] So the standard for showing that Doe's injury was the "plainly obvious consequence" of the hiring decision is a high bar.[83] And under controlling precedent, Doe cannot scale it. We thus agree with the district court that the hiring administrator's decision to hire Hernandez does not trigger municipal liability.

### 3. Doe's Hybrid Theory

Unable to prove municipal liability under either of these theories, Doe seems to have created a hybrid theory that cherry-picks elements from both. Basically, she combines the policymaker element from the "official policy" theory with the causation element from the "single incident" theory. This approach, though creative, is unavailing.

Doe asserts that EISD omitted a requirement for additional screening, that this omission led to the hiring administrator being deliberately indifferent to the consequences of her hiring decision, and that the *hiring administrator's* deliberate indifference was the "moving force" behind her injury. This attenuated causation argument is problematic for multiple reasons.

For starters, Doe has not shown that EISD's policies were unconstitutional or that the omission of any specific guideline about how and when to use arrest data from a criminal record was so glaring as to make "the particular injury suffered by [Doe]" a known or obvious consequence of the Board's decision to not include such detailed requirements in its policy.[84]

---

[82] *Id.* at 408–09 (emphasis added).

[83] *See Livezey*, 657 F. App'x at 277–78 ("We have held that failing to respond to a history of 'bad or unwise acts' that 'demonstrate lack of judgment, crudity, and, perhaps illegalities' is not enough for deliberate indifference.") (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

[84] *Bryan County*, 219 F.3d at 461.

No. 19-50737

Also, although some courts have held a municipality liable for an omission where its "deliberate indifference led to its omission and . . . the omission *caused* the employee to commit the constitutional violation,"[85] that's not what we have here. Doe's causation theory is more attenuated and in a different sequence. And Doe has not shown that, when adopting its hiring policy, the Board had knowledge of anyone else having been injured by an EISD employee who had been arrested—but not convicted—of a crime. Nor has Doe shown a pattern of constitutional violations and a decision by the Board to continue following "an approach that they know or should know has failed to prevent" such constitutional violations.[86] Doe has fallen short of the "rigorous standards of culpability and causation" that "must be applied to ensure that [EISD] is not held liable solely for the actions of its employee."[87] The district court got this right too.

## CONCLUSION

Jane Doe endured contemptible misconduct, and we do not minimize the cruelty of what she suffered. Both her assailants were criminally punished. But we are bound by on-point precedent, which imposes exacting liability requirements. On these facts, the district court correctly concluded that EISD cannot be held liable under Title IX or § 1983 for its employees' reprehensible acts. We AFFIRM.

---

[85] *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002) (emphasis added) (citation omitted).

[86] *Brown*, 520 U.S. at 407; *see also Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000) ("In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiffs must show that the policy itself is unconstitutional.").

[87] *Brown*, 520 U.S. at 405.