# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2020

Lyle W. Cayce
Clerk

No. 20-20077

M.E., *Individually and on behalf of their minor child*, J.E.; B.E., *Individually and on behalf of their minor child*, J.E.,

*Plaintiffs—Appellants*,

*versus*

Alvin Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-01117

Before Wiener, Costa, and Willett, *Circuit Judges*.

Per Curiam:[*]

J.E. suffered prolonged sexual abuse at the hands of her junior high's school police officer. This appeal concerns her Title IX claim against the school district for sex discrimination as a result of that abuse. Because school district officials lacked actual knowledge of the officer's sexual abuse or of a

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20077

significant risk that such abuse might occur, we affirm the district court's grant of summary judgment in favor of the school district.[1]

I.

J.E. was in sixth grade when Terry Roy Tennard began to groom her for sexual abuse. Tennard, a school resource officer for Alvin Independent School District, was assigned to Manvel Junior High School, which J.E. attended. One afternoon, Tennard saw J.E. crying and invited her into his office to talk. After that, J.E. went to Tennard's office frequently, and she began confiding in him about things she felt she could not share with anyone else, including turmoil at home that led to her parents' separation. During this period, Tennard, "joking," asked J.E., "[W]hen are you going to let me below the belt?" She didn't know what he meant.

In the winter of J.E.'s seventh grade year, Tennard began to rape her. Over the next year, Tennard sexually assaulted her more than twenty times.

A couple of months after the abuse began, J.E.'s mother, M.E., learned that J.E. had missed a class period at school because she was in Tennard's office. M.E. also received notices from teachers about J.E.'s exhibiting concerning behavior and performing poorly on assignments. M.E. met with the school's assistant principal, Ahmesha Graham, as well as Tennard and J.E.'s English teacher, Chaquisha Mosley. M.E. expressed concern that her daughter was discussing "personal family matters" with Mosley and Tennard and becoming too close to both of them. M.E. requested that J.E. be directed to her counselor instead and that J.E.'s

---

[1] Plaintiffs also appeal the district court's exclusion of portions of a report and untimely declaration prepared by their expert, Dr. Roslin Growe. Because none of the opinions offered by Dr. Growe would change the substantive result in this case, we need not address them.

relationship with Mosley and Tennard be kept on "a professional level only." At this time, however, no one suspected sexual abuse.

Following the meeting, Graham informed school administrators that M.E. did not want J.E. to have any interaction with Tennard, notified J.E.'s counselor, and emailed J.E.'s teachers to let them know that J.E. should be sent to her counselor or to Graham if needed. Graham also told Tennard not to interact with J.E.

But J.E. and Tennard continued to meet, and the abuse went on. About a year after the first instance of rape, Graham discovered that J.E. had skipped class to visit Tennard. Graham reminded J.E. that her mother did not want her spending time with Tennard and reported the incident to the principal.

Days later, M.E. found sexually explicit messages on J.E.'s phone and learned of the abuse. M.E. immediately alerted the Brazoria County Sheriff's Office. Tennard was fired and arrested. A jury convicted Tennard of criminal sexual assault of a child and sentenced him to thirty years in prison.

M.E. and J.E.'s father, B.E., sued Alvin ISD and Tennard individually and on behalf of J.E. in Texas state court, bringing both state-law claims and a Title IX claim. After Alvin ISD removed the case to federal court, the district court dismissed all claims against the school district except for the federal claim. The court later granted a summary judgment in favor of Alvin ISD on the Title IX claim and entered partial final judgment allowing an appeal of the ruling in favor of the school district. *See* FED. R. CIV. P. 54(b). The claims against Tennard remain pending in district court.

II.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. A school district receiving federal funds may be held liable under Title IX via a private action for damages when its employees sexually abuse students. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998).

But Title IX does not create vicarious liability for the acts of a district employee. *Id.* at 288. To establish liability, plaintiffs must demonstrate that Alvin ISD had actual knowledge that J.E. was at a significant risk for sexual abuse by Tennard and that the school's response amounted to deliberate indifference. *See Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358–59 (5th Cir. 2020) (hereinafter *Edgewood ISD*). In granting summary judgment, the district court "assum[ed], without deciding" that the school had actual notice of J.E.'s abuse and proceeded to the deliberate indifference inquiry. But reviewing the summary judgment motion de novo, we resolve this case under the first requirement concerning the school district's knowledge. *See Renasant Bank v. St. Paul Mercury Ins. Co.*, 882 F.3d 203, 210 (5th Cir. 2018) (recognizing that we may affirm on alternative grounds).

That knowledge requirement cannot be satisfied by showing that the school district should have known there was a substantial risk of abuse. It requires the plaintiff to establish that the "district actually knew that there was a substantial risk that sexual abuse would occur." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652–53 (5th Cir. 1997). Precedent from the Supreme Court and our court illustrates the difficulty of meeting this actual knowledge requirement. Complaints from parents that a teacher "often made sexually suggestive comments" to students in class were "plainly insufficient" to alert school officials that he might be in a sexual relationship with a student. *Gebser*, 524 U.S. at 277, 291. An inconclusive investigation into reports that one student spent time with a chemistry teacher at his home did not put school officials on notice that the teacher might be in a sexual

No. 20-20077

relationship with another student. *Edgewood ISD*, 964 F.3d at 363–64. Even an email notifying a school district's board of trustees and superintendent that a middle school student had sexually assaulted another minor fell "far short of Title IX's stringent actual-knowledge standard" for notice of the student's possible sexual harassment of others. *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 954 (5th Cir. 2015).

There is an additional hurdle for Title IX plaintiffs seeking to establish a school district's knowledge: "[I]t is not enough the misconduct is reported to any employee. The reported-to employee must 'at a minimum ha[ve] authority to institute corrective measures on the district's behalf.'" *Edgewood ISD*, 964 F.3d at 356 (quoting *Gebser*, 524 U.S. at 277). So the knowledge of a teacher, such as Mosley—who at one point told J.E. that her relationship with Tennard "was going to get him fired"—does not suffice.[2] Plaintiffs must show that someone like Assistant Principal Graham had the required knowledge. *See Rosa H.*, 106 F.3d at 660–61.

Despite the abhorrent and repeated sexual abuse J.E. endured, there is not evidence from which a jury could conclude that Alvin ISD knew of a substantial risk of such abuse. *See Edgewood ISD*, 964 F.3d at 359. J.E. testified that she did not tell anyone about the abuse—not her family, not her friends, and not her teachers or counselors. No evidence suggests that Tennard ever discussed the abuse with others; he testified at his criminal trial that the rapes never happened.

School administrators were aware of a close—likely inappropriately close—relationship between J.E. and Tennard. But before Tennard's arrest, there were no allegations of any sexual harassment. Although M.E. expressed discomfort with the bond between her daughter and Tennard in

---

[2] Mosley testified, however, that she never suspected sexual abuse.

No. 20-20077

her meeting with Assistant Principal Graham, there was no mention that anything of a sexual nature might be occurring. Rather, the meeting concerned J.E.'s struggles at school and her penchant for confiding personal matters in a school police officer and teacher instead of her school counselor or therapist. All the meeting attendees other than Tennard—M.E., Graham, and Mosley—testified that they did not suspect sexual abuse. Although the meeting put the district on notice that Tennard had become a trusted confidant for J.E., it did not provide notice of a substantial risk that sexual abuse was occurring.

Plaintiffs also point to Graham's later discovery that J.E. had again skipped class to visit Tennard. Perhaps J.E.'s skipping class to see Tennard should have raised the administration's suspicions, but it fell short of putting them on notice of "a substantial risk" for sexual abuse. *Rosa H.*, 106 F.3d at 652–53; *see Doe v. Northside I.S.D.*, 884 F. Supp. 2d 485, 493 (W.D. Tex. 2012) (explaining that a student skipping class to visit a teacher in her classroom "in hindsight . . . was problematic" but that it did not serve to put school officials on notice of potential abuse because "at the time, there was no indication that [the teacher] was inappropriately touching [the student]").

What happened to J.E. is horrific. But Title IX precedent creates a "high bar" to hold school districts liable for the unlawful acts of school employees. *Howell v. Austin Indep. Sch. Dist.*, 323 F. App'x 294, 295 (5th Cir. 2009) (per curiam). There may have been, as plaintiffs contend, "red flags" that should have alerted the district of a substantial risk that Tennard was sexually assaulting J.E. But the law requires that the district actually knew of the risk, not just that it should have known. *Rosa H.*, 106 F.3d at 652–53, 656. Evidence showing actual knowledge of that risk does not exist here.

\* \* \*

6

No. 20-20077

We AFFIRM the judgment of the district court granting summary judgment to the school district. The case against Tennard remains in the district court.